275 So.2d 214 (1973)
Albert PALMIERI et al.
v.
E. M. FRIERSON et al.
Albert PALMIERI et al.
v.
FIREMAN'S FUND INSURANCE CO.
Nos. 9227, 9228.
Court of Appeal of Louisiana, First Circuit.
February 28, 1973.
Rehearing Denied April 9, 1973.
Writs Granted June 11, 1973.
*215 James E. Moore, Franklin, Moore, Beychok & Cooper, Baton Rouge, for third party defendant-appellant Fireman's Fund.
H. Alva Brumfield, Baton Rouge, for plaintiff-appellant Palmieri.
France Watts, III, Franklinton, for defendant-appellees Williams, Travelers and Frierson.
Before SARTAIN, BLANCHE and WATSON, JJ.
WATSON, Judge.
These consolidated lawsuits arise out of an accident which occurred at 7:15 a.m. on November 26, 1964, in St. Tammany Parish. Albert Palmieri and his wife, Verna L. Palmieri, were passengers in a 1965 model Ford automobile owned by Mrs. Palmieri *216 and insured by Fireman's Fund Insurance Company. Their son, Dominick Palmieri, was driving the automobile in a southerly direction on U.S. Highway 11 when he collided with a left turning truck-trailer owned by E. M. Frierson and operated by Luther Williams. The truck-trailer was turning into an unmarked gravel road, the Brown Switch Road, which forms a "T" intersection with U.S. Highway 11 approximately one and a quarter miles north of the city of Slidell, Louisiana. An unidentified automobile was between the left turning truck-trailer and the Palmieri vehicle. All of the vehicles were going south on the two lane highway.
Mr. and Mrs. Palmieri filed suit, claiming damages for personal injuries in the collision, against E. M. Frierson, Luther Williams and the insurer of the truck-trailer, Travelers Indemnity Company; Fireman's Fund Insurance Company, as insurer of the Palmieri vehicle, was made a third party defendant by Travelers Indemnity Company, Frierson and Williams. In the second suit, Mr. and Mrs. Palmieri petitioned for similar damages against their liability insurer, Fireman's Fund Insurance Company, and this insurer filed a reconventional demand against Frierson, Williams and Travelers on a subrogation claim for monies paid as collision repairs to the Ford automobile. In addition, Fireman's Fund Insurance Company filed a third party action against Frierson, Williams and Travelers.
The trial of the consolidated cases was not held until May 5, 1971, at which time Mr. Albert Palmieri was deceased and his heirs had been substituted as parties plaintiff. A claim that the accident caused his death was abandoned at the trial.
The plaintiffs contended that both the Palmieri driver and the driver of the truck were at fault in the accident. Fireman's Fund Insurance Company contended that the sole proximate cause of the accident was the negligence of the truck driver and, in the alternative, that there was joint negligence on the part of Dominick Palmieri and Luther Williams.
Travelers Indemnity Company, Frierson and Williams contended that the accident was caused by the sole negligence of Dominick Palmieri, and this view of liability was accepted by the trial court which found no negligence on the part of the truck driver.
The trial court concluded that the left turn was almost completed at the time of the collision and that the accident was caused by the negligence of Dominick Palmieri in overtaking the preceding vehicles near the "T" intersection without proper observance of the turning maneuver of the truck. Damages were awarded against Fireman's Fund Insurance Company in the amount of $2,500 for Albert Palmieri's injuries and in the amounts of $3,500 and $1,391.50 for personal injuries and for special damages, respectively, to Verna L. Palmieri.
The plaintiffs, Mrs. Verna L. Palmieri and the heirs of Albert Palmieri, have appealed contending that the concurrent negligence of Luther Williams and Dominick Palmieri was the proximate cause of the accident and that the amounts awarded by the trial court as damages were inadequate.
Fireman's Fund Insurance Company has appealed the judgment of the trial court both as to the findings on negligence and as to the assessment of damages.
Defendants, Travelers Indemnity Company, E. M. Frierson and Luther Williams have not appealed but argue that the awards for the injuries of Mr. and Mrs. Palmieri were excessive in the event that they be cast for damages. The plea of prescription is urged as to Fireman's Fund's reconventional demand against Travelers on the subrogation claim for property damage. On the question of liability, Travelers Indemnity Company, Frierson and Williams submit that the judgment of the lower court should be affirmed.
*217 There is not much dispute among the parties as to the scene of the accident or as to the general manner in which the collision occurred.
U.S. Highway 11 at the scene of the accident is straight and level; the weather at the time of the accident was clear. The Brown Switch Road was not identified in any way by signs; it was not visible from any distance; and the area was not a no-passing zone. The speed limit was 60 miles per hour. The Palmieri vehicle was in the process of passing the two preceding vehicles, and the truck-trailer was making a left turn into the Brown Switch Road.
The real argument among the parties on the question of liability is whether Williams, the truck driver, or young Palmieri, the automobile driver, or both, were guilty of negligence which proximately caused the accident. The trial judge exonerated the truck driver but we disagree; we find negligence on the part of both drivers.
Even accepting the version of the accident given by the driver of the pole truck and his co-worker, to-wit: that a hand signal was made, that a signal was activated on the cab of the truck; that the car immediately behind the truck also turned on its left blinker; and that the accident occurred on the shoulder of the road; it is difficult to see how the driver of the pole truck could be completely free of negligence. He had 35 feet of truck and trailer behind him and no signal on the rear of the trailer. The gravel road into which he turned was unmarked. The area was not indicated as a no-passing zone. A juncture such as this is not an "intersection" within the meaning of the statute which prohibits passing at an "intersection". LSA-R.S. 32:76, Dukes v. Kirkwood, 105 So.2d 318 (1st La.App.1958), Crane v. London, 152 So.2d 631 (2nd La.App.1963), Davis v. Southern Farm Bureau Casualty Insurance Company, 134 So.2d 366 (3rd La.App.1961), United States Fidelity and Guaranty Company v. Duet, 177 So.2d 302 (1st La.App.1965), Ardoin v. Chachere, 207 So.2d 574 (3rd La.App.1968).
The truck driver was aware that there was no turn signal on the rear of his truck: ". . . the pole trailer didn't have any signal lights." (Luther Williams, truck driver, at TR. 17).
He was also aware of the nature of the intersection and stated when queried about why the accident occurred:
"Well, the only thing I could figure is, as narrow as the little road is and the speed you have got to get to go into it and the speed he was driving, he just caught me before I could get in there." (TR. 40).
There is no question that the truck driver knew of the presence of the Palmieri automobile. The truck driver admitted that turning his truck required all his concentration and that he ceased looking to the rear upon commencing his turn:
"Well, when I was making the turn, when I first looked in the mirror, he was that far. Then I had to go to make the turn." (TR. 30). "I watched him all the time I was making it up to when I started on across the lane. . . ." (TR. 35).
The facts strongly indicate, in our opinion, that the truck had slowed, as had the unidentified car following it, that young Palmieri pulled out to pass, that Williams failed to note the Palmieri vehicle in the passing lane, that Williams then began his turn, and the crash occurred.
Trooper Kennedy's testimony indicates that the Palmieri automobile was not going at an excessive rate of speed. It left 165' of skid marks which began in the passing lane. Truck driver Williams probably failed to see the Palmieri vehicle because as he stated: "I was watching the car behind me, and the car behind me was stopping, so I went on to make my turn." (TR. 168).
*218 On a straight and level stretch of highway it was negligence on Williams' part to fail to observe the Palmieri vehicle in the passing lane of traffic.
In our opinion, the accident was caused in part by Williams' negligence in making a dangerous turn and failing to observe the Palmieri vehicle in the passing lane of traffic. The obligation of a left-turning driver was described in American Road Insurance Company v. Brown, 269 So.2d 539 at 541 (1st La.App.1972):
"It is well settled law that left turns are extremely dangerous and it is incumbent upon a motorist attempting such a maneuver to not only signal his intention to do so, but also to be alert to oncoming and overtaking traffic, and not attempt such a maneuver unless it can be accomplished with reasonable certainty. L.R. S. 32:104(A); Husser v. Bogalusa Coca Cola Bottling Company, 215 So.2d 921 (1st La.App., 1968); and Thigpen v. Aetna Casualty & Surety Company, 201 So.2d 525 (1st La.App., 1967)."
Counsel for Travelers, Frierson and Williams, cites and quotes from McGehee v. Cox, 233 So.2d 36 (1st La.App.1970). However, the intersection in that case was blacktopped, wide and "readily observable" (233 So.2d 36 at 37). Such was not the case here. The Brown Switch Road was a narrow gravel road, and there was no testimony to indicate that driver of the Palmieri vehicle was or should have been aware of it. It is quite significant that McGehee v. Cox, supra, is a case in which both the passing driver and the left turning driver were found to be negligent. The court found the left turning driver "contributorily negligent for essaying a left turn without first ascertaining that it was safe to do so." Ibid.
Ducote v. Allstate Insurance Company, 242 So.2d 103, (1st La.App.1970), writ refused, 257 La. 618, 243 So.2d 532 (1971), is also cited, but the facts in that case are different in many respects from this. The passing driver was found to be proceeding at an excessive rate of speed under the circumstances. The accident occurred at night, and the passing driver failed to notice a left blinker signal and two cars stopped behind the left turning driver, all with brake lights. In the case before the court, there were no turn signals on the left turning trailer. The accident occurred during the daytime, and the other circumstances were materially different.
We must now consider the question of Dominick Palmieri's negligence as a cause of the accident. In this regard, we are particularly impressed by the undisputed fact that the unidentified vehicle, traveling behind the truck and ahead of young Palmieri, was able to slow and continue ahead without being involved in the accident. If this unknown driver was able to observe the turn of Williams, then Dominick Palmieri should have been able to avoid the accident.
Both the driver and the passenger in the truck testified that the driver gave a hand signal and activated the turn signal on the cab of the truck before commencing his left turn. They further testified that the unidentified vehicle immediately behind the truck activated its left signal light. The trial judge heard these witnesses and apparently found their testimony convincing.
In addition to the display of the turning signals, it appears that the truck and car were virtually stopped in the road.
The trial judge found that Dominick Palmieri was negligent in failing to keep a proper lookout and that his negligence was the cause of the accident. We find no manifest error in this conclusion, although we also find negligence on the part of the truck driver.
It has been argued that young Palmieri was faced by a sudden emergency, but that doctrine is not available to one who has brought the emergency on himself or who has not used due care; the sudden emergency doctrine does not lower the standard of care required of a motorist before *219 the emergency occurs. Dick v. Phillips, 253 La. 366, 218 So.2d 299 (1969).
Having already concluded that Luther Williams, the driver of the truck, was negligent we therefore amend the judgment of the lower court to hold that the drivers of both vehicles involved in the collision were negligent and that the negligence of each was a proximate cause of the injuries sustained by Mrs. Palmieri and her deceased husband.
The trial court awarded plaintiff, Mrs. Palmieri, $3,500 for her personal injuries and itemized special damages of $1,391.50, as follows:

Dr. D. T. Wilson $446.50
Jackson Bone & Joint Clinic 60.00
Columbia Brace 23.51
Winston County Community Hos. 206.00
Drug bills 53.44
Dr. Albert Azordegan 290.00
Doctors Hospital of Jackson 312.05

Mr. Palmieri died prior to the trial on February 7, 1969. His widow and children, Mrs. Verna L. Palmieri, Dominick Antonio Palmieri, Albert Prentiss Palmieri, Rocco I. Palmieri, and Mrs. Antoinette Palmieri Womble, as substituted parties plaintiff, were awarded $2,500 for Mr. Palmieri's personal injuries.
Fireman's Fund Insurance Company contends that the trial court erred in awarding Mrs. Palmieri the $290 bill of Dr. Azordegan and the $312.05 bill of the Doctors' Hospital in Jackson, Mississippi as items of special damage, stating that the trial court obviously did not deem the condition and treatment of 1970 to be a result of this accident.
All defendants contend that the awards for the injuries of Mr. and Mrs. Palmieri were excessive, while the plaintiffs contend that the amounts awarded by the trial court were inadequate.
The only medical evidence concerning the injuries sustained by Mr. Palmieri and Mrs. Palmieri in the automobile accident are the depositions of three doctors, one a general practitioner who was the Palmieri family doctor, another a general surgeon who examined Mr. and Mrs. Palmieri on behalf of an insurance company and the third a neuro-surgeon of Jackson, Mississippi who saw Mrs. Palmieri in 1970. This court finds the medical evidence to be very sparse as to the exact nature and extent of the injuries.
As to Mr. Palmieri, the most serious finding by Dr. Wilson, his family doctor and a general practitioner of Louisville, Mississippi, was that Mr. Palmieri had suffered a heart condition as a result of the accident, but the electrocardiogram performed in Dr. Wilson's office was "essentially normal" except for a slow pulse rate. Mr. Palmieri was not referred to a heart specialist and there is no testimony by a specialist in the record to associate whatever heart condition Mr. Palmieri may have had with the accident. It is important to note that on trial all claims of any connection between Mr. Palmieri's death and the automobile accident were specifically abandoned by the plaintiffs so there is no question before the court relative to his death. Dr. Wilson confined Mr. Palmieri to his house for about two months following the accident and prescribed nitroglycerin and darvon. It was also discovered that Mr. Palmieri had a left inquinal hernia, but the doctor did not express an opinion as to whether the hernia was caused by the accident. Dr. Wilson also found that Mr. Palmieri was suffering from a sprain of the thoracic lumbar spine, but his x-rays and physical examination were essentially negative. The examination of Mr. Palmieri by Dr. Charles McVea, the insurance company's physician, was entirely negative.
On the basis of the medical evidence in the record, we cannot say that the trial judge abused his discretion in assessing damages of $2,500 for the injuries to Albert Palmieri.
*220 Mrs. Palmieri also went to the family doctor, Dr. Wilson, on November 28, 1964, some two days following the collision. She had generalized complaints of headache, stiffness and pain associated with a whiplash type sprain of her cervical and thoracic spine. He prescribed a Thomas neck collar and medication. Mrs. Palmieri was hospitalized for a five day period and was treated for a bleeding contusion of the right kidney and splenic enlargement as well as the pain in her back and neck. Apparently, Dr. Wilson continued to treat Mrs. Palmieri for her pain for many months, although the kidney problem cleared up without further difficulty.
Dr. Charles McVea examined Mrs. Palmieri at the same time as Mr. Palmieri and found her free of symptoms. Dr. Wilson gave his deposition on August 9, 1967 concerning Mrs. Palmieri and we do not have the benefit of his observations and treatment of her subsequent to that date. However, she reported to Dr. A. Albert Azordegan, a neuro-surgeon of Jackson, Mississippi, on February 12, 1970 who examined her, made x-rays and found that she had some weakness of the left triceps, atrophy and shrinking of the thenar muscle (located just about the web of the left hand), and some numbness of the left thumb and hand.
Dr. Azordegan admitted Mrs. Palmieri to the hospital for observation and a myelogram on May 3, 1970, this procedure showing a shortening of a nerve sleeve at the C-5, C-6 level. Otherwise, the myelogram revealed no abnormalities. Dr. Azordegan recommended conservative treatment for Mrs. Palmieri to determine the course of her condition and instructed her to return for a subsequent examination but she failed to return to him.
The doctor had concluded at the time of his deposition in December, 1970 that surgery would be the preferred treatment for Mrs. Palmieri. He had not seen her since May of 1970, but he had spoken with her by telephone. Mrs. Palmieri indicated at the trial that she had failed to follow the suggestion of surgery because her son was overseas and because of her financial situation.
This court was well impressed with the testimony of Dr. Azordegan in his deposition. However, it appears that the trial court gave considerable weight to the facts that Dr. Azordegan did not see Mrs. Palmieri until 1970, some six years following the accident, that he saw her on only one occasion for examination and on one occasion for a myelogram, and that she failed to report back to him for further examination or treatment.
We are not particularly impressed by the evidence given by Dr. Charles McVea, because the complaints and the types of examinations necessary for Mr. and Mrs. Palmieri fall outside Dr. McVea's specialty. No special tests or x-rays were made by Dr. McVea to assist in his diagnosis.
On the basis of the medical information in the record, we cannot say that the trial court abused his "much discretion" in awarding the sum of $3,500 as well as special damages to Mrs. Palmieri.
After carefully reviewing the evidence concerning the injuries sustained by the deceased Mr. Palmieri and by Mrs. Palmieri, we have concluded to affirm the awards given by the trial court.
There is some indication that additional medical could have been produced and there is no question that a later deposition could have been obtained from Dr. Wilson. When the medical testimony is scant, it must be remembered that the burden of proof is on plaintiffs to prove the nature and extent of the injuries for which damages are claimed. Cloney v. Travelers Insurance Company, 253 So.2d 83 (1st La. *221 App.1971); writ denied, 259 La. 871, 253 So.2d 212 (1971). While our analysis of the testimony of the lay witnesses, the doctors' depositions and the documentary evidence would suggest the possibility of different awards for the injuries to Mr. and Mrs. Palmieri, we cannot say that the trial judge, who had the benefit of hearing and seeing Mrs. Palmieri, has abused his "much discretion" in assessing damages. LSA-C.C. Art. 1934; Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); and Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967).
The award of special damages in the total amount of $1,391.50 appears to be correct and is affirmed; the argument by defendants that the bills of Dr. Azordegan and Doctors' Hospital should not be allowed is without merit.
The subrogation claim of Fireman's against the other defendants is foreclosed by the finding of negligence on the part of Fireman's insured driver, Dominick Palmieri, and it is dismissed.
For the reasons assigned, it is ordered, adjudged and decreed that there be judgment against Fireman's Fund Insurance Company, E. M. Frierson, Luther Williams and Travelers Indemnity Company, jointly and in solido, in favor of Verna L. Palmieri in the amount of $4,891.50, and in favor of Verna L. Palmieri, Dominick Antonio Palmieri, Albert Prentiss Palmieri, Rocco L. Palmieri, Mrs. Antoinette Palmieri Womble, as survivors of Albert Palmieri, in the amount of $2,500.
Costs of all proceedings are taxed half against Fireman's Fund Insurance Company and half against E. M. Frierson, Luther Williams and Travelers Indemnity Company.
Affirmed in part and reversed in part.