293 So.2d 641 (1974)
Joseph E. TAFT et al., Plaintiffs-Appellees,
v.
Bobby GIST et al., Defendants-Appellants.
No. 4490.
Court of Appeal of Louisiana, Third Circuit.
April 17, 1974.
Rehearing Denied May 14, 1974.
*642 Hall, Raggio & Farrar by R. W. Farrar, Jr., Lake Charles, for defendants-appellants.
Drewett & Jacques by Robert T. Jacques, Jr., Lake Charles, for plaintiffs-appellees.
Before CULPEPPER, MILLER and WATSON, JJ.
WATSON, Judge.
This is an automobile accident case in which the appeal concerns only issues relating to damages, liability having been admitted in the trial court.
Plaintiffs are Joseph E. Taft, a forty-nine year old resident of Orange, Texas, and Blue Cross-Blue Shield of Texas, a Texas insurance corporation. Defendants are Bobby Gist, a resident of Sulphur, Louisiana, and his automobile liability insurer, Liberty Mutual Insurance Company.
The accident occurred on January 31, 1972, at about 9:20 A. M. Plaintiff was stopped in his 1971 Chevrolet on East Napoleon Street in Sulphur at a red light, when his vehicle was hit in the rear by a 1970 Pontiac being driven by defendant, Gist.
Briefly, the injuries, which plaintiff contends he sustained as a result of the accident, consist of a cervical strain and its aftermath, commonly referred to as a "whiplash", which developed almost immediately following the collision and a hernia, which did not develop until almost a year later and for which he had an operation. It should be noted, however, that plaintiff contends that he developed symptoms indicating the hernia condition somewhat earlier in point of time.
The trial court accurately reviewed the facts pertinent to the damage issues in its reasons for judgment, and we will quote a portion thereof with approval:
"Following the accident Taft was taken to the Cal-Cam Hospital in Sulphur where he was given a shot and then removed to the Orange Memorial Hospital where he was seen by Dr. Howard Williams in the emergency room on the day of the accident, January 21, 1972. Taft was complaining of neck and shoulder pain. Dr. Williams' report, introduced in evidence, reflects that x-rays were made of the cervical spine, which were negative as to bony injury. This physician felt that Taft had sustained a rather severe whiplash injury and admitted him to the hospital and started supportive treatment and physiotherapy. Taft was discharged from the hospital January 28, 1972 and followed as an outpatient. Taft was continued on conservative treatment as an outpatient. The physician notes that cervical muscle spasm was present as of February 1, 1972. On February 12 the physician noted that Taft was improved, but treatment was continued. This physician last saw Taft on February 15, 1972, at which time Taft was improved but still complaining of neck pain, and this physician had not seen him up until the time of the report, which was March 21, 1972.
"Dr. Norman P. Morin, an orthopedic surgeon, testified that he saw Taft on April 21, 1972 complaining of shoulder and neck pain. This physician found mild spasm in the cervical area, and x-rays reflected a calcification of the ligaments at C-5, C-6 and C-6, C-7 levels. He stated that this condition could be as a result of a trauma or an aging process. His opinion was that Taft suffered a mild myofascial strain from the accident and had not recovered at the time of the visit, but felt that he would recover in two to three months thereafter as result of a cervical injury. There was no abdominal complaint to this physician.

*643 "Dr. J. W. Ambrister, an orthopedic surgeon, examined the plaintiff June 11, 1972 and found minor or mild degenerative changes in the same areas as that found by Dr. Norman Morin. He felt the plaintiff had no objective evidence to indicate any disability from the accident or injury to the dorsal region. He felt that he had recovered from the neck injury.
"The plaintiff testified that he began to notice a lack of sexual drive approximately a month following the accident and sex acts produced severe pain in the abdominal area approximately three to four months following the accident.
"He continued to have pain in the abdomen and consulted with Dr. Lifford R. Lancaster, surgeon, on January 10, 1973. This physician diagnosed Taft's problem as a hernia lateral to the internal ring which was operated upon with rather un-eventful post-operative recovery. The physician testified that the hernia had the appearance of being secondary to trauma. The location of the hernia was approximately 4" below the belt line. Taft testified that he had his steering wheel tilted downward and struck it with his abdomen in the accident. The evidence is convincing that the hernia resulted from the accident.
"We next turn to the extent of damages suffered by Taft. The evidence reflects that Taft lost approximately 3 weeks' wages immediately following the accident. He was being paid $1100 per month at that time. As a result of the hernia operation he lost wages during the period of January 10, 1973 to April 3, 1973 at the rate of $1190 per month. His total loss of earnings was $4097.00.
"His neck area gave him pain and discomfort for approximately 6 months. He suffered pain from the existence of the hernia in addition to the operation for same. General damages for these injuries in the amount of $10,000 would be fair and just.
"The medical expenses were stipulated in the amount of $2,068.99. Blue Shield had paid $1,373.60 of this amount and would be entitled to judgment under their subrogation from Taft.
"A property loss of $100 (deductible portion of damage to Taft vehicle) was stipulated." (TR. 119, 120, 121 and 122).
The total award by the trial court was $14,892.39, but, on timely motion for new trial, the matter was reargued and the trial court amended the judgment by reducing the amount of loss of earnings by $892.00. The reason for the reduction was that the trial court found on reviewing the testimony that plaintiff had made a contribution to a sick leave plan entitling him to 13 weeks of salary, that the payments made during his disability by his employer constituted 16 weeks' loss of earnings and that the remaining three weeks were a gratuity which should not be charged as damages against defendants. Therefore, the total award, as amended, was $14,000.39.
On appeal, defendants-appellants submit in brief the following three specifications of error on the part of the trial court:
"(1) In including in the general damages an award for pain, suffering, etc. resulting from the hernia;
"(2) In allowing plaintiff-appellee recovery of loss of earnings;
"(3) In allowing those medical expenses incurred in connection with the operation for repair of the hernia sustained by plaintiff-appellee."
The first and third specifications of error pertain to the same basic issue, that is, did the hernia result from the automobile accident of January 31, 1972? These two issues, therefore, will be discussed as one.
The trial court concluded that the plaintiff had carried his burden of proving that the hernia resulted from the accident. Apparently, the trial court was impressed with the only testimony presented on this subject which was that of plaintiff and his *644 operating physician, Dr. Lifford R. Lancaster. We are especially impressed with the testimony of Dr. Lancaster, who described plaintiff's condition which was surgically repaired as a ventral direct hernia that had a femoral component. The doctor also stated that the hernia had the appearnance of being "secondary to trauma". (TR. 108). When asked if the hernia could have resulted from being thrown forward into the steering wheel, the doctor said "This could very well be the type of trauma that would do it." (TR. 117). Also, the doctor testified that all hernias of this particular type that he had seen "... were due to trauma ...". (TR. 110).
Dr. Lancaster's testimony, when coupled with plaintiff's testimony that his automobile seat broke loose as a result of the force of the impact and that he was thrown forward into the steering wheel of his automobile striking his abdomen, we find to constitute a reasonable evidentiary basis on which the trial court could conclude that the hernia resulted from the automobile accident. Actually, no evidence was presented to the contrary. We find no manifest error in the trial court's award of damages and medical expenses resulting from the hernia.
As to the general damages awarded, we find the sum of $10,000 for the cervical strain (or "whiplash") and the hernia to be within the "much discretion" accorded the trial court. LSA-C.C. art. 1934; Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Palmieri v. Frierson, 275 So.2d 214 (La.App. 1 Cir. 1973); aff. La., 288 So.2d 620 (1974). See also Fox v. State Farm Mutual Automobile Insurance Co., La., 288 So.2d 42 (1973).
The second specification of error relates to the award made by the trial court for plaintiff's loss of earnings during both the period he was away from work because of cervical injury and the period he missed while having the hernia repaired. The contention is that since plaintiff's employer paid him full wages during the 16 weeks of work missed, loss of wages was not a proper item of damages.
The majority rule in other jurisdictions is that the wrongdoer is not entitled to a mitigation of damages by reason of wages paid, either contractually or gratuitously, by a plaintiff's employer. See Ann. 7 A. L.R.3rd 516. Louisiana has required an element of loss of sick leave, annual leave, or other benefits, before allowing recovery of wages which have actually been received. Sebren v. Millers Mutual Fire Insurance Co. of Tex., 182 So.2d 99 (La.App. 3 Cir. 1966).
The Louisiana jurisprudence is clear that a person who misses work and is paid sick leave benefits or annual leave benefits is entitled nevertheless to recover the loss of wages from the tort feasor, or, stated differently, a tort feasor is not entitled to credit for payments made as sick leave benefits or annual leave benefits. McMullin v. Millers Mutual Fire Ins. Co. of Texas, 246 So.2d 702 (La.App. 2 Cir. 1971); Dunlap v. Armendariz, 265 So.2d 352 (La.App. 4 Cir. 1972). The theory of law is that the wrongdoer is not entitled to benefit by payments made to the injured party from a collateral source to which the wrongdoer has not contributed. Thomas v. Paper Haulers, Inc., 165 So.2d 61 (La.App. 2 Cir. 1964).
The situation in the present case is that Taft was a supervisory employee of the Dupont Company in Orange. He was paid by his employer during the period he missed work on what was found by the trial court to constitute a type of sick leave. As plaintiff described it, he was paid while missing work as part of his compensation of employment and as a type of benefit or protection received for being a valued employee of the company. According to plaintiff's testimony, which was not contradicted and which was accepted by the trial court, he was entitled under *645 company policy to payment of wages as a type of sick leave up to 13 weeks. He was paid a total of 16 weeks by his employer but only 13 weeks were allowed as lost wages by the trial court; the three weeks in excess of 13 were disallowed. We find no manifest error in the determination by the trial court. Cf. Sebren v. Millers Mutual Fire Insurance Co. of Tex., supra.
Appellant calls our attention to Webb v. Liberty Mutual Insurance Company, 278 So.2d 577 (La.App. 3 Cir. 1973), which we find to differ on the facts from the instant case. In Webb the number of days lost from work was not established; there were records available, but not produced, as to the sick leave charged by the employers involved; and this court remanded for evidence on the questions raised.
Therefore, we find that the trial court correctly awarded plaintiff damages for wages lost during 13 weeks of the period of his absence from work due to injuries received in the automobile accident.
For the reasons assigned, we find no error in the decision by the trial court.
Costs of the appeal are taxed against appellants.
Affirmed.