654 So.2d 358 (1995)
Jane Lefebvre SLEDGE, et al., Plaintiffs-Appellees,
v.
CONTINENTAL CASUALTY COMPANY, et al., Defendants-Appellants.
No. 26472-CA.
Court of Appeal of Louisiana, Second Circuit.
January 25, 1995.
Rehearing Granted May 10, 1995.
David F. Butterfield, G.M. Bodenheimer, Shreveport, for appellants.
Brian L. Williams, Baton Rouge, Jack R. Gamble, Jr., Mansfield, for appellees.
Before SEXTON, HIGHTOWER and WILLIAMS, JJ.
WILLIAMS, Judge.
This is a suit for damages instituted by a mother, individually and on behalf of her minor son, following a one-vehicle accident in which the child sustained personal injuries. After the jury returned its verdict, the trial judge granted judgment notwithstanding the verdict in favor of the plaintiff. He reassessed liability and increased the amount awarded to the plaintiff. Subsequently, the defendants perfected this appeal. For the reasons hereinafter expressed, we reverse and reinstate the jury verdict with amendments.

FACTS
In June 1990, Claude Randolph Sledge ("Sledge") borrowed a van from Dr. Joseph Beard and drove the van to Florida to attend the Louisiana State Bar Association Convention. His son, James Claude Sledge (age 15), daughter, Catherine Leigh Sledge (age 11), his nephew, and two friends of the children accompanied him. Sledge drove all night *359 and the group arrived in Destin the morning of June 3, 1990.
The group vacationed in Florida for several days and on Saturday night, June 9, 1990, at approximately 10:00 or 11:00 p.m., departed for Louisiana. Sledge was driving when the group left on the return trip. Eventually, all of the passengers went to sleep, with James being the last to fall asleep.
Between 2:00 a.m. and 3:00 a.m., Sledge woke James and asked him to drive. Sledge said he was tired and getting sleepy. James began driving in Mississippi on U.S. Highway 49. Sledge talked with James for five to ten minutes and then went to sleep. Subsequently, James fell asleep and the van crashed into a tree. Sledge was killed instantly in the accident. James suffered multiple injuries. The other four passengers were also injured.
Following the accident, James' mother, Jane Lefebvre Sledge, filed suit individually and as tutrix of her son against Continental Casualty Company ("Continental"), the insurer of Dr. Beard's van; Casualty Reciprocal Exchange ("Reciprocal"), Sledge's automobile insurance carrier; and the Succession of Claude Randolph Sledge.
In her petition, Jane Lefebvre Sledge alleged Sledge's fault was the sole cause of the accident. The case was before a Desoto Parish jury. The jury found Sledge to be 35% at fault and James 65%. The jury awarded total damages to James in the amount of $262,500.[1] The jury awarded to Jane Lefebvre Sledge a total of $64,500.[2] A judgment pursuant to the jury's verdict, i.e. based on 65% fault, was entered November 8, 1993.
On December 15, 1993, the trial court granted the plaintiff's motion for judgment notwithstanding the verdict. The trial court found Sledge 100% at fault for the accident. The trial court then increased the total amount awarded to James Sledge from $262,500 to $776,388.[3] Additionally, the trial court increased the total amount awarded to Jane Lefebvre Sledge from $64,500 to $74,405.09.[4] Finally, the trial court granted Continental a credit in the amount of $1,750. In both the November 8, 1993 judgment and the December 15, 1993 judgment notwithstanding the verdict, 100% of the costs of court was assessed to the defendants.

DISCUSSION
Continental appeals asserting three assignments of error. The assignments of error concern the trial court's granting judgment notwithstanding the verdict, the credits to which Continental is entitled, and the trial court's assessment of costs against the defendants. Reciprocal and the Succession appeal and adopt and join in the assignment of error concerning the trial court's granting of a judgment notwithstanding the verdict.

JUDGMENT NOTWITHSTANDING THE VERDICT
A judgment notwithstanding the verdict ("JNOV") is a procedural device by which a trial judge may correct a legally erroneous verdict. Hardin v. Munchies Food Store, 521 So.2d 1200 (La.App. 2d Cir.1988), writ denied, 523 So.2d 1321 (La.1988). A motion for a JNOV may be granted on the issue of liability or on the issue of damages or both. LSA-C.C.P. Art. 1811(F). The standard for granting and reviewing motions for JNOV has developed jurisprudentially.
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly *360 in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e., do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated.
Anderson v. New Orleans Public Service, 583 So.2d 829 (La.1991). (Citations omitted.)

APPORTIONMENT OF FAULT:
After reviewing the record in its entirety, we hold it was error to grant the motion for JNOV as to the apportionment of fault. In granting the JNOV, the trial judge assessed 100% of the fault to Sledge. Because the evidence presented to the jury was conflicting, it is impossible to say reasonable men and women could not reach a different conclusion. The jury reasonably could have believed James shared in the fault.
The plaintiff contends that Sledge was at fault for waking his son, James, and requesting James, whom he knew to be tired from vacation as well as a relatively inexperienced driver, to drive in early morning hours on an unfamiliar highway. The plaintiff urges that but for Sledge's decision to ask James to drive, the accident would not have occurred. While Sledge's action may have been imprudent, that imprudence does not in and of itself absolve James of fault.
The defendants contend the fault lies with James, who fell asleep while driving, and allowed the van to leave the roadway and crash into a tree. They further contend it was not unreasonable for Sledge to have entrusted the driving to James. Cf. Moore v. Chrysler Corp., 596 So.2d 225 (La.App. 2d Cir.1992), writ denied, 599 So.2d 316, 317 (La.1992) (parents of 15 year old were not negligent in allowing licensed daughter to drive van late at night even though daughter fell asleep while driving, where both parents were tired, one parent had had alcoholic drink, and there was no indication daughter was unsafe driver). James had driven this particular vehicle while on vacation. He willingly assumed the driving responsibility when asked by his father. James testified he would not have agreed to drive had he felt too tired or sleepy. The defendants presented evidence that James had knowledge of various techniques for coping with driver fatigue and may have employed one of these techniques although he testified he had not been aware he was falling asleep. Furthermore, James was a licensed driver and was driving the van at the time of the accident.[5]
*361 In reviewing all the evidence, with all reasonable inferences in favor of the non-moving party, we cannot say the facts and inferences point so strongly and overwhelmingly in favor of the plaintiffs that reasonable, fair-minded men and women could not arrive at a contrary verdict. The jury could have believed James, as a licensed driver, had a duty to reasonably operate and control the van he was driving, and, because he failed to maintain control of the van, he bears some responsibility for the accident and resulting injuries. Further, the jury could have believed that but for James' falling asleep while driving, the accident would not have occurred. Because we conclude the trial judge erred in granting the JNOV on the issue of apportionment of fault, the jury's apportionment of 65% fault to the plaintiff, James, and 35% to Sledge is reinstated.

DAMAGES:
In reviewing the trial judge's decision to grant the motion for JNOV on the issue of damages, we conclude the motion was improperly granted. Such a motion for JNOV should be granted only when under the evidence reasonable minds could not differ as to the amount of damages. Scott v. Hospital Service District, 496 So.2d 270 (La.1986); Anderson, supra. In reviewing all the evidence, with all reasonable inferences in favor of the non-moving party, we cannot say the facts and inferences point so strongly and overwhelmingly in favor of the plaintiff that reasonable, fair-minded men and women could not arrive at a contrary verdict. The jury could have reasonably believed fair and adequate compensation to be total damage awards of $262,500 for James and $64,500 for Jane Lefebvre Sledge.
Through the testimony of various physicians, James established that he sustained the following injuries from the accident:
multiple and comminuted facial fractures with a LeFort II maxillary fracture;
damage to the three sinuses on both sides of the face;
abnormal occlusion;
lacrimal sac, tear duct damage;
lacerations, contusions, abrasions of the face and upper extremities;
major laceration of left elbow;
glass fragment embedded in finger of left hand;
open fracture of right tibia;
right knee injury (tear of ligament, damage to end of femur);
closed fracture of the left tibia and fibula;
open injury/fracture above left knee, fracture of left femur; and,
severe laceration of left ankle involving Achilles tendon.
The record shows that immediately after the accident James was hospitalized for 22 days. He underwent surgery for the orthopedic injuries to his legs, including the insertion of rods into two fractured bones. He also underwent facial surgery, which included the insertion of metal plates with screws to hold the bones in place. James was in physical therapy for approximately six weeks after he returned home and was on crutches until approximately eight to ten weeks after surgery.
In July 1990, James began treatment to correct the position of his teeth and upper jaw with braces. In the course of treatment it was discovered that he cannot fully open his mouth, has displaced discs in the jaw, and crepitus (creaking, popping) of the temporomandibular joint. Additional treatment was recommended, but as of the date of trial had not been done.
In September 1990, James underwent surgery to alleviate excessive tearing of his right eye. That surgery involved running a tube from the lacrimal sac out through the nose. Later, problems developed with the tubing's becoming loose, rubbing the eye, and causing discomfort. As a result, the tube had to be removed prematurely. However, by the date of trial, James no longer experienced the tearing problem.
In October 1990, James underwent arthroscopic surgery for injuries to the right knee. The right knee injuries included a partial tear of the anterior cruciate ligament and damage to the weight bearing surface of the end of the thigh bone. Also, the imbedded glass was removed from James' hand during this surgery.
*362 During 1991 and 1992 James sought treatment on a number of occasions for sinus problems. He was diagnosed as having a deviated septum and chronic sinusitis; surgery was recommended but had not been done as of the date of trial.
Surgery was done in December 1991, to remove the two rods from James' legs. Following that surgery, James again had to use crutches for about a month.
Many witnesses noted that James was rather stoic and did not dramatize or seek sympathy for his injuries. However, Dr. Bruce M. McCarthy testified that the type orthopedic injuries James suffered are "quite painful." Dr. Herbert K. Plauche testified that for about eight weeks James was in "a lot of pain." Dr. Plauche further testified James has a 20% loss of function of the lower left extremity and a 25% loss of function of the lower right extremity. He would place a restriction on James' lifting because, although James can lift, repetitive lifting will cause additional problems, especially with the right knee. Likewise, he would restrict other activities such as running, squatting, standing or walking for long periods, and climbing, because of the additional harm they may cause. Dr. Plauche testified the condition of the right knee is chondromalacia, a degenerative condition, and he expects James to develop arthritis in the right knee. Dr. Larry H. Day testified James would likely experience chronic sinusitis due to the injuries to his sinuses. He also testified disfigurement to the shape of the face is common after the facial surgery which James underwent. Dr. Plauche noted depression in James and recommended counseling.
The defense expert witness, Dr. Phillip Osborne, evaluated James in 1993. He rated James as having a 16% whole person impairment based on the injuries to the face, right knee, and left ankle. Dr. Osborne noted James' disfigurement, including a drooping eyelid and "glassy" skin on the face as well as multiple scars on several parts of his body. According to Dr. Osborne's rating, James has a 10% loss of function of the lower right extremity and a 6% loss of function of the lower left extremity. Dr. Osborne also opined that as James ages he will develop arthritis, particularly in the knee and the ankle, and may also have problems with his jaw. Dr. Osborne testified James continued to have some reactive depression at the time he saw him for evaluation.
When school started in the fall of 1990, James attended although he initially walked with a limp and felt weak. James was unable to play on the football team because of his injuries. His testimony indicated he was able to participate in swimming but could not fully participate in other sports as he had previously. At the time of trial, James no longer walked with a limp. He had been accepted into college and planned to pursue a career in nursing.
While James endured pain and suffering as a result of multiple injuries, has some permanent impairment, and likely will develop arthritis at some point in the future, the fact remains that he has made a remarkable recovery from his injuries and should be able to pursue a reasonably normal life. Applying the standards set forth above, we find the trial judge erred in granting the JNOV on the question of damages. The evidence is capable of different interpretations; it cannot be said that reasonable persons could not differ. The jury's verdict must stand on this issue.
The trier of fact is given much discretion in fixing the amount of damages in cases of offenses, quasi-offenses, and quasi-contracts. LSA-C.C. Art. 2324.1; Moore, supra. The damage award should not be disturbed by the reviewing court absent a showing of a clear abuse of discretion by the trial court. Reck v. Stevens, 373 So.2d 498 (La.1979). While the awards made by the jury in the instant case are on the low side, we cannot say that they are abusively low. The jury's verdict is reinstated.
The record reflects the parties stipulated James' lost wages to be $1,388 and Jane Lefebvre Sledge's lost income to be $1,514.02. The parties further stipulated James' past medical expenses at $62,891.07. Thus, we affirm these to be the proper amounts for these awards. The jury's verdict will be corrected to use the stipulated figures for these elements of damages.

*363 CREDITS
Continental seeks to clarify the amount of credit it is due for medical expenses incurred by James but paid under the medical pay provision of the policy issued by Continental to the owner of the van, Dr. Beard. The trial court agreed to allow a credit of $5,000. The parties agreed the credit would be prorated in accordance with the apportionment of fault. In the original judgment, based on the jury's apportionment of 35% fault to Sledge, the credit was properly adjusted to $1,750. However, when the JNOV was granted as to liability, reapportioning fault 100% to Sledge, the trial court failed to adjust the credit accordingly. Because we reverse the JNOV as to fault, this issue is moot.
A tortfeasor may not benefit by payments made to the injured party from a collateral source to which the tortfeasor has not contributed. Taft v. Gist, 293 So.2d 641 (La. App. 3d Cir.1974); Friedmann v. Landa, 573 So.2d 1255 (La.App. 4th Cir.1991). However, a tortfeasor is entitled to credit for payments made through insurance procured by the tortfeasor himself. Hawthorne v. Southeastern Fidelity Ins. Co., 387 So.2d 26 (La.App. 3d Cir.1980) (citations omitted); Williamson v. St. Francis Medical Center, 559 So.2d 929 (La.App. 2d Cir.1990).
During trial, the defendant proffered evidence that Sledge procured health insurance for his son, James, through the Louisiana State Employees Group Benefits Program. Included in the proffer was a computer printout of payments, as well as an affidavit from Barbara Bacon, a representative of the Program, stating the Program paid a total of $40,875.94 of James' medical expenses under his father's group health insurance policy.
Continental seeks a credit in the amount of the actual medical expenses paid by Sledge's health insurance policy ($40,875.94) prorated in accordance with the fault attributable to Sledge (35%). We find such a credit proper and supported by the evidence. The judgment will be amended to reflect a credit of $14,306.58.

COSTS
Continental complains the trial court improperly assessed all costs to the defendant. In both the November 8, 1993 judgment and the December 15, 1993 JNOV, 100% of the costs of court was charged to the defendants. The trial court provided no written reasons for its allocation of costs. Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable. La.C.C.P. Art. 1920. The assessment of costs lies within the discretion of the trial court and will not be reversed unless that discretion is abused. Walker v. Bankston, 571 So.2d 690 (La.App. 2d Cir.1990).
In the instant case, where both plaintiff and defendants appear to have contributed to the escalation of costs to some extent and both have prevailed to some extent, we find charging 100% of costs to the defendants to be an abuse of discretion. We determine an equitable assessment to be one-half of costs to plaintiff and one-half to defendants, in both the trial court and this court. See, Walker, supra, (no abuse of discretion in casting costs 50% to each litigant where jury apportioned fault 90% to plaintiff and 10% to defendant.); and State v. Nicholls College Foundation, 592 So.2d 419 (La.App. 1st Cir.1991), writ denied, 593 So.2d 651 (La.1992) (abuse of discretion where both parties prevailed to some extent and trial court gave no reasons for charging all costs to one party; equitable assessment is one-half costs to each party).

CONCLUSION
For the foregoing reasons, the judgment below is reversed and the jury verdict is reinstated with amendments. We reverse as to the granting of the JNOV on the issue of liability and reinstate the jury's apportionment of fault (35% to Claude Randolph Sledge and 65% to James Claude Sledge). We reverse as to the granting of the JNOV on the issue of damages and reinstate the jury verdict with the following amendments. The lost income award for James Claude Sledge is $1,388 and the lost income award for Jane Lefebvre Sledge is $1,514.02, as stipulated. James Claude Sledge's total *364 medical expenses are $62,891.07, as stipulated, subject to credits totalling $16,056.58 allowed Continental. All costs, here and below, are assessed one-half to the plaintiff, Jane Lefebvre Sledge, and one-half to the defendants, Continental Casualty Company, Casualty Reciprocal Exchange, and the Succession of Claude Randolph Sledge.
REVERSED. JURY VERDICT REINSTATED, AMENDED, AND AFFIRMED AS AMENDED.
Before MARVIN, SEXTON, NORRIS, HIGHTOWER and WILLIAMS, JJ.

ON REHEARING
PER CURIAM.
In their application for rehearing the plaintiffs, Jane Lefebvre Sledge and James Sledge, assert that this court lacked jurisdiction to hear the appeal in the instant case because the trial court did not comply with the mandate of LSA-C.C.P. Art. 1811(C) and, thus, was never divested of its original jurisdiction. After further review of the record and applicable law, we agree.
The record reflects that on November 12, 1993, the plaintiffs filed a Motion for Judgment Notwithstanding the Verdict, and Alternatively, Motion for Additur, and in the Further Alternative, Motion for New Trial. By judgment rendered December 15, 1993, the trial court granted the motion for judgment notwithstanding the verdict.
LSA-C.C.P. Art. 1811(C)(1) provides:
If the motion for a judgment notwithstanding the verdict is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed and shall specify the grounds for granting or denying the motion for a new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment. (Emphasis added.)
On the face of the record before us, the trial court did not rule on the motion for new trial, thereby failing to comply with the mandates of LSA-C.C.P. Art. 1811(C). An appeal taken while a timely motion for a new trial is pending is premature and subject to dismissal because the motion suspends the operation of the final judgment being appealed. Petitto v. McMichael, 552 So.2d 790 (La.App. 1st Cir.1989).
Unfortunately, neither we nor the parties noticed this error earlier in the proceedings. Now aware of it, however, we cannot render judgment on the merits because the trial court was never divested of jurisdiction and, therefore, this court's jurisdiction never attached. See, Bowers v. Viator, 597 So.2d 1250 (La.App. 3d Cir.1992); State Through DOTD v. Scramuzza, 594 So.2d 517 (La.App. 5th Cir.1992); and, Petitto, supra.
In opposition to the application for rehearing, the defendant, Continental Casualty Company urges that the plaintiffs desired only judgment notwithstanding the verdict and waived their request for alternative remedies at the trial court level by virtue of the language in the plaintiff's briefs filed with the trial court.[1] Continental Casualty Company further contends that the plaintiffs waived their right to contest the jurisdiction of this court because they did not complain of the trial court's failure to rule on the alternative motions earlier in the proceedings. We do not find these arguments persuasive. When used in the Code of Civil Procedure, the word "shall" is mandatory. LSA-C.C.P. Art. 5053. The trial court's noncompliance with LSA-C.C.P. Art. 1811 results in a jurisdictional defect which requires curative action by the trial court.
Accordingly, our judgment in the instant case is vacated, the appeal is dismissed, and this case is remanded to the trial court for a ruling on the pending motion for new trial in compliance with LSA-C.C.P. Art. 1811. Costs of this appeal are assessed to Continental *365 Casualty Company, Casualty Reciprocal Exchange, and the Succession of Claude Randolph Sledge.
APPEAL DISMISSED; REMANDED WITH ORDER.
SEXTON, J., concurring in part and dissenting in part with written reasons.
HIGHTOWER, J., dissenting with written reasons.
SEXTON, J., concurring in part and dissenting in part.
In the trial court plaintiffs aggressively pursued their motion for JNOV and clearly expressed little, if any, interest in the motion for a new trial. It is only after this court essentially reinstated the jury verdict on fault and damages that plaintiffs complain that we have no jurisdiction because their alternative motion for a new trial was not ruled on by the trial court. I find this result fundamentally unfair. However, it appears to be legally correct. I, therefore, reluctantly agree with the position of the majority on rehearing.
Under these circumstances, I would assess all costs of this appeal to the plaintiffs.
HIGHTOWER, J., dissenting.
Upon examining the trial judge's reasons for granting JNOV, and considering the plaintiffs' arguments (in brief) in advance of that decision, it is obvious that the district court concluded the appropriate remedy was not to grant a new trial (or motion for additur) but, instead, judgment notwithstanding the verdict. Hence, within the intent and design of LSA-C.C.P. Art. 1811(C), the new trial motion has been denied.
Furthermore, in asserting their alternative new trial motion, plaintiffs maintained only that the jury decision had been clearly contrary to the law and evidence. See LSA-C.C.P. Art. 1972(2). Yet, as our original discussion herein demonstrates, that verdict is well founded in both the evidence and the law. See Gibson v. Bossier City General Hospital, 594 So.2d 1332 (La.App. 2d Cir. 1991) (observing that, on such a motion, the jury's verdict should not be set aside if supported by any fair interpretation of the evidence). As a result, it would be difficult to envision the district court now granting a new trial without abusing its discretion.
I respectfully dissent from the granting of a rehearing and the dismissal of the appeal.
NOTES
[1] Future medical expenses$25,000; Lost income $500; Past and future physical pain and suffering$150,000; Past and future mental and emotional pain and suffering, including mental anguish and emotional distress$75,000; Permanent physical disfigurement$12,000; Past and future loss of enjoyment of life$0; Past and future permanent physical impairment$0.
[2] Loss of society$0; Medical expenses$63,000; Lost income$1,500.
[3] Future medical expenses$25,000; Lost income $1,388; Past and future physical pain and suffering$300,000; Past and future mental and emotional pain and suffering, including mental anguish and emotional distress$100,000; Permanent physical disfigurement$50,000; Past and future loss of enjoyment of life $100,000; Past and future permanent physical impairment$200,000.
[4] Loss of society$10,000; Medical expenses $62,891.07; Lost income$1,514.02.
[5] The defendants also call our attention to other litigation arising from the same accident and in which the jury was upheld in apportioning fault 50% to James and 50% to Sledge. See, Sledge v. Continental Casualty Co., 25,770 (La.App. 2d Cir. 06/24/94), 639 So.2d 805. While the presentation of that case and the instant case differed somewhat in the pleadings and evidence presented, it is persuasive that the jury in the earlier case found James and Sledge to share liability. However, we need not and do not rely on the result in the previous case in our current review. One jury may apportion fault 50%50% while another jury, on the same accident, may apportion the fault 65%35%, and yet, both apportionments may be found to be within the reasonable range of discretion.
[1] In the briefs in question the plaintiffs argued most strongly for judgment notwithstanding the verdict and noted its advantages in the instant case over additur and a new trial. However, we do not read them as having impliedly waived the alternative motions, if such can be done. Of course, had the plaintiffs withdrawn the alternative motion for a new trial, the trial court would have been freed of its mandatory duty under LSA-C.C.P. Art. 1811; however, we find no indication of such a withdrawal in the record.