737 So.2d 75 (1999)
Amanda RODRIGUEZ, Plaintiff-Appellee,
v.
PRUDHOMME MOBILE HOMES, et al., Defendants-AppellantPrudhomme Mobile Homes.
No. 98-1384.
Court of Appeal of Louisiana, Third Circuit.
March 3, 1999.
*76 Anne Elizabeth Watson, Sunset, for Amanda Rodriguez.
Armand J. Brinkhaus, Sunset, for Prudhomme Mobile Home, et al.
John E.W. Baay, II, New Orleans, for Cappaert Manufactured Housing, Inc.
BEFORE: YELVERTON, COOKS, and PETERS, Judges.
YELVERTON, J.
This is an appeal by Prudhomme Mobile Homes, Inc. from a default judgment rendered against it in a redhibition claim. The default judgement was entered after the following sequence of events. Amanda Rodriguez filed a suit on September 4, 1997, against Prudhomme Mobile Homes, Inc., Cappaert Manufactured Housing, and A-Escort and Mobile Home Movers for problems and defects she was experiencing in the mobile home she had bought on May 22, 1997. Cappaert manufactured the home, Prudhomme sold it to her, and Escort transported it to her. Shortly after moving into the home, Rodriguez noticed that the siding on both sides was buckling; there was severe water leakage; cracks had developed in the ceiling; the dishwasher, tub, and air conditioner leaked; the windows would not open; and there were other problems.
After filing suit, the attorney for Prudhomme requested that Rodriquez call the fire marshal to inspect the home wanting to repair the mobile home as cheaply and efficiently as possible. Pending inspection by the fire marshal's office, it was agreed that no answer would be filed. The home was inspected on October 30, 1997. The fire marshal's office then sent a letter on November 6, 1997, to Prudhomme and Cappaert informing them of the defects it found in the mobile home and suggesting that the defects be repaired in twenty working days.
On December 17, 1997, Rodriguez's attorney sent a letter to Prudhomme's and Cappaert's attorneys. She informed them that the defects had not been repaired and *77 that, if they did not file answers immediately, she would take a default judgment.
A preliminary default was entered against Prudhomme on January 20, 1998. A preliminary default was entered against Cappaert on February 27, 1998. Judgments against Prudhomme and Cappaert were confirmed on March 11, 1998. The trial court found that the mobile home contained serious redhibitory defects that rendered it unfit for its intended purpose. Judgment against Prudhomme and Cappaert was entered rescinding the sale and awarding $30,952 to Rodriguez. Nonpecuniary damages and attorney's fees were also awarded against Cappaert. Prudhomme and Cappaert were given credit for Rodriguez's use of the mobile home from the purchase date until satisfaction of the judgment in the amount of the principal that she paid on each monthly installment.
Prudhomme filed a motion for a new trial on April 6, 1998, alleging that the judgment was contrary to the law and evidence and in violation of the understanding and agreement between counsel for the parties resolving the issues and time frames. Cappaert also filed a motion for a new trial. At the hearing on the motions for new trial, Prudhomme, for the first time, alleged that service of process of the original petition was insufficient.
Cappaert's motion for new trial was granted, and Prudhomme's motion for new trial was denied. Prudhomme appeals the denial of its motion for a new trial.

NEW TRIAL
Prudhomme claims that it is entitled to a new trial. It alleges several deficiencies with the default judgment. It claims there was improper service, a failure to have the sheriff serve a notice of judgment, an invalid preliminary default, a failure to meet the burden of proof, and an improper allocation of credit for use and ordering a return of interest.
A new trial shall be granted when the verdict or judgment appears clearly contrary to the law and evidence. La. Code Civ.P. art.1972(1). A new trial may be granted in any case where there are good grounds. La.Code. Civ.P. art.1973. "Generally, new trials are granted in the interest of justice, and are largely left to the discretion of the trial judge." Washington v. Grand Casinos of Louisiana, 97-1297, p. 4 (La.App. 3 Cir. 6/3/98), 715 So.2d 515, 517. "[I]n cases involving default judgments the court [supreme] has noted that careful review of the circumstance [sic] underlying the judgment is required due to the strong policy considerations, in favor of the defendant, that every litigant should be allowed his day in court." Id.
Most of the grounds alleged by Prudhomme would be discretionary grounds for granting a new trial pursuant to Article 1973. The only ground asserted that would mandate a new trial would be a finding by us that the trial court abused its discretion when it found that the default judgment was not contrary to the law and evidence. We will address each of these issues separately.

SERVICE OF PROCESS
At the hearing on the motion for a new trial, Prudhomme alleged for the first time that service of process of the original petition was insufficient. It claims that, as a corporation, personal service had to be made on its agent for service of process pursuant to La.Code Civ.P. art. 1261(A). It argues that the return of service clearly shows that personal service was made on "L. Lyons" who is the agent's receptionist and that this is insufficient service of process.
The attorney for Prudhomme is also its agent for service of process. Normally, under La.Code Civ.P. art. 1235(B), service of process on an attorney as a representative of a client would be proper when the attorney's secretary is served in the attorney's office. However, this article *78 would not apply in this case because at the time service of process was made on Armand Brinkhaus it was in his capacity as Prudhomme's agent for service of process and not as Prudhomme's attorney. Therefore, service of process was not made on Prudhomme as required by law.
Rodriguez argues that Prudhomme has waived any right it has to object to the court's lack of jurisdiction over it because it made a general appearance in this case. In 1997 the Legislature repealed La.Code Civ.P. art. 7 to eliminate the waiver of jurisdiction through a general appearance. Acts 1997, No. 578 amended La.Code Civ.P. art. 925 to delete the provision for waiver by appearance. Acts 1997, No. 1055 amended La.Code Civ.P. art. 928 to provide that a declinatory exception shall be pleaded "prior to or in the answer, or prior to the confirmation of a default judgment." Rodriguez has argued that although La.Code Civ.P. art. 7 was repealed by Acts 1997, No. 578, Article 7(A)(6) relating to general appearance applies in this case because the nullity provided in Acts 1997, No. 518, § 4 does not apply to suits filed prior to January 1, 1998, since under § 5 the entire act applies only to suits filed on and after January 1, 1998. Pursuant to § 5 it can be argued that even the nullity provision in § 4 would not apply to suits filed prior to January 1, 1998. See Editor's Notes to La.Code Civ.P. art. 6. However, pursuant to § 6 Acts 1997, No. 518 enacting Article 7(A)(6), Article 7(A)(6) was not to become effective until January 1, 1998. In essence, it never was effective because once Article 7(A)(6) was to become effective, the nullity provision came into effect. So, it was not in effect when the present suit was filed on September 4, 1997, before the effective date of the whole Act. Furthermore, the remainder of Article 7 relating to general appearance was repealed effective August 15, 1997, when Acts 1997, No. 578, § 5 repealed Article 7. So, Article 7 had been effectively repealed when the present suit was filed. Therefore, general appearance is not the applicable law in this case.
The declinatory exception is the appropriate vehicle for raising the objection of insufficiency of service of process. La. Code Civ.P. art. 925(A)(2). The general rule is that the proper remedy for a defendant to challenge the validity of a default judgment is by means of a suit to annul the judgment. McMickens v. McMickens, 386 So.2d 972 (La.App. 3 Cir.1980); Decca Leasing Corp. v. Torres, 465 So.2d 910 (La.App. 2 Cir.), writ denied, 468 So.2d 1211 (La.1985); In re Johnson, 449 So.2d 157 (La.App. 4 Cir.1984).
We are aware of cases in which the courts have entertained the issue of insufficient service of process when raised in a motion for a new trial. Collier v. Fugler, 29,457 (La.App. 2 Cir. 5/7/97), 694 So.2d 553 and Dicta Realty Associates v. Conrad, 230 So.2d 595 (La.App. 4 Cir.1970). However, without commenting further on those rulings, we find that the present case differs from those cases in a very important aspect. The law changed effective January 1, 1998, and the changes were in effect when the procedural events hereafter discussed took place. In essence Prudhomme is attempting to allege through a motion for a new trial what should have been alleged in a declinatory exception. Since it has been raised after the default judgment was confirmed, it is too late. See La.Code Civ.P. art. 928(A), as amended by Acts 1997, No. 1055.
We also find that Prudhomme submitted to the jurisdiction of the court as contemplated by La.Code Civ.P. art. 6(A)(3) when it filed a motion for a new trial. The motion for a new trial alleged that the default judgment was contrary to the law and evidence and the agreement of the parties. Sufficiency of service of process was not raised until the hearing on the motion for a new trial. It was argued in addition to the other alleged grounds for granting the motion for a new trial.
*79 Clearly, Prudhomme submitted to the jurisdiction of the court in this case before it even raised the issue of sufficiency of service of process since it filed a motion for a new trial alleging other grounds and asked the trial court for relief which was unrelated to service of process. Arsenault v. Gulf States Util. Co., Inc., 482 So.2d 695 (La.App. 1 Cir.1985); Cook v. Deshautreaux & Klein Pediatric Clinic, 294 So.2d 591 (La.App. 4 Cir.), writ denied, 296 So.2d 834 (La.1974); Doll v. Mallard, 95 So.2d 692 (La.App.Orleans 1957). In essence Prudhomme has invoked the jurisdiction of this court by seeking other remedies besides insufficient service of process. See DeFatta v. DeFatta, 352 So.2d 287 (La.App. 2 Cir.1977). We also note that Prudhomme continues to allege other grounds for reversal of the judgment even on appeal. Therefore, we find that it waived any objections it may have had to service of process. There is no need for us to further discuss any issues surrounding the service of process, and we will now address the other issues raised by Prudhomme in the denial of its motion for new trial.

DEFAULT JUDGMENT
Prudhomme alleges that the default judgment is contrary to the law and evidence on several grounds. La.Code Civ.P. art.1972(1). We will address each of these grounds separately.

Name Used in Preliminary Default
Prudhomme states that a proper preliminary default was not entered on the technicality that it refers to "Prudhomme Mobile Home" as opposed to "Prudhomme Mobile Homes, Inc." Prudhomme argues that since the preliminary default was not proper, the default judgment should be reversed and a new trial granted.
Prudhomme cites Thomas v. Calhoun Properties, Inc., 576 So.2d 1172 (La.App. 3 Cir.), writ denied, 578 So.2d 934 (La.1991), for the proposition that this is an improper procedure which has deprived Prudhomme of a legal right and that enforcement of the judgment would be unconscionable and inequitable. Thomas involved a situation in which the wrong entity was sued, and a default judgment was rendered against it. It is obvious why a judgment against the wrong entity would be unenforceable.
In this case the default judgment was entered against the correct entity. The name was merely inaccurate in that "Inc." was omitted and an "s" was left off "Homes." These minor typographical errors are of no moment to the entry of the preliminary default. Ready Portion Meat Co. v. Michael's, 542 So.2d 207 (La.App. 3 Cir.1989). Also see B.F. Carvin Const. v. Jefferson Parish, 97-913 (La.App. 5 Cir. 2/11/98), 707 So.2d 1326. We note that the original petition referred to Prudhomme Mobile Homes, Inc. several times. We find that this assignment of error has no merit. There was never any question that the default judgment was entered against the proper party.

Sufficiency of the Evidence
Prudhomme argues that the evidence introduced at the hearing to confirm the default judgment was insufficient. It claims that the trial court ignored the requirements of La.R.S. 51:911.23(F) as to the required building standards.
"A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case." La. Code Civ.P. art. 1702(A).
In order for a plaintiff to obtain a default judgment, "he must establish the elements of a prima facie case with competent evidence, as fully as though each of the allegations in the petition were denied by the defendant." "In other words, the plaintiff must present competent evidence that convinces the court that it is probable that he would prevail on a trial on the merits." A plaintiff seeking to confirm a default must prove both the existence and the validity of his claim. There is a presumption that a default judgment is supported by sufficient evidence, but this presumption *80 does not attach when the record upon which the judgment is rendered indicates otherwise.
Sessions & Fishman v. Liquid Air Corp., 616 So.2d 1254, 1258 (La.1993) (citations omitted).
In order to prevail in an action in redhibition, the purchaser has the burden of establishing (1) that the thing sold is absolutely useless for its intended purpose or that its use is so inconvenient that it must be supposed that he would not have bought it had he known of the defect; (2) that the defect existed at the time of the purchase, but was neither known nor apparent to him; and (3) that the seller was given the opportunity to repair the defect. Lafleur v. Desormeaux, 96-906 (La.App. 3 Cir. 3/5/97), 692 So.2d 617.
Regarding redhibition actions involving mobile homes, La.R.S. 51:911.23(F), provides that "[i]n any redhibitory action brought against the seller of a manufactured home or mobile home, the standards set forth in the Code shall be considered in establishing whether or not a defect exists." The Code referred to is the National Mobile Home Construction and Safety Standards Act, 42 U.S.C. 5401 et seq. La.R.S. 51:911.22(1).
Prudhomme cites Turner v. Fleetwood Homes of Alabama, 97-1510 (La.App. 3 Cir. 4/1/98), 711 So.2d 742, in support of its position that in order to establish a prima facie case in a redhibitory action against the seller of a mobile home, there must be evidence of the violation of the applicable standards. Bott v. Sterling Homes, Inc. of Lafayette, 527 So.2d 548, 549 (La.App. 3 Cir.1988), also held that a court "when determining whether a mobile home is redhibitorily defective must consider certain standards...."
We agree that Rodriguez was required to establish a violation of the standards set forth in the National Mobile Home Construction and Safety Standards Act in its redhibition claim against Prudhomme. However, evidence was in fact introduced by Rodriguez that established that the problems she was experiencing were in violation of those standards.
When suit was first filed, Rodriguez called the fire marshal to inspect the mobile home. This was done at the suggestion of Prudhomme's attorney. The office of the fire marshal is charged by law with the adoption, administration, and enforcement of the manufactured housing construction and safety standards. La. R.S. 51:911.32. The fire marshal's office inspected the home on October 30, 1997. The report was addressed to Cappaert and Prudhomme, with a copy to Rodriguez. Rodriguez testified that Dale Prudhomme was present when the fire marshal made the inspection. The fire marshal's findings, on a Field Inspection Form, were introduced into evidence at the hearing to confirm the default judgment. This report found that both the front and back doors leaked, windows would not open, the garden tub leaked, and the vinyl siding was buckling, all defects in violation of the standards. The specific Code violations were listed on the report. These were the identical defects about which Rodriguez and her witnesses testified.
Rodriguez and her family testified at the hearing that attempts were made to repair these same problems but that they were not repaired. No attempt was ever made to repair the buckling siding. The problems even worsened and caused further problems like constant leaks on her carpet. The doors continued to leak, the ceiling separated from the wall in the small bedroom and master bedroom, the screen door did not close, the tie downs were not tight, the wall was warping the living room, and the insulation under the home needed changing because of water in it from the leaks. The windows in her children's bedroom still would not open, presenting a hazard in the event of a fire. A tarp had to be placed on the roof to help with the leaking problems. Rodriguez's brother-in-law, who did renovations, carpentry, and general construction, and worked on mobile *81 homes, testified that the problems were continuing and getting worse. He testified that it looked like the mobile home was "racked," or had hit a bump on the road which knocked it out of plumb and made everything crooked. There was testimony that the transportation of the home was handled by Prudhomme.
We do not agree with Prudhomme's argument that because the fire marshal made a notation on the Field Inspection Form that the violations it found were the manufacturer's problem, Prudhomme has no responsibility. Pursuant to La.Civ. Code art. 2520 the seller warrants the buyer against redhibitory defects. Prudhomme's liability is founded also on this codal warranty. We agree with the trial court that the mobile home was not fit for its intended use and that Rodriguez would not have bought it if she had known of the mountain of defects it contained.
We find that Rodriguez established a prima facie case against Prudhomme by presenting competent evidence that it was more probable than not she would prevail on the merits of her redhibitory claim against Prudhomme. She established that there were initial violations of the standards, that these problems continued to exist, and that many more problems surfaced over time.

Judicial Economy
Prudhomme alleges that a new trial should be granted in the interest of judicial economy. Prudhomme argues that the manufacturer was granted a new trial, Prudhomme has claims for indemnification and/or contribution against the manufacturer and the mover, and the manufacturer may have a claim yet untried against the mover. Because those claims will have to be tried anyway, Prudhomme believes it would be expeditious for all issues to be resolved between the parties in one suit.
"A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law." La. Code Civ.P. art.1973. The trial court has virtually unlimited discretion to grant a new trial if convinced that a miscarriage of justice has resulted, and unless an abuse of discretion can be demonstrated, the trial court's action in granting or denying a new trial on discretionary grounds will not be reversed. Watson v. Nelson, 97-474 (La.App. 3 Cir. 10/29/97), 702 So.2d 1002, writ denied, 97-2958 (La.2/6/98), 709 So.2d 738.
We do not find that the trial court abused its discretion in granting a new trial to one defendant and not to the other. Even if the manufacturer had not been granted a new trial, there would still be issues that remain to be resolved. It is possible that some saving in judicial time might result by granting a new trial as to all issues; even so, by no means would that be a good enough reason to justify causing Rodriguez to lose a judgment that she fairly and properly obtained.

AWARD OF INTEREST
Prudhomme alleges that the trial court erred in giving credit for the principal payments on the notes and then ordering it to reimburse Rodriguez the interest payments. It claims this amounts to unjust enrichment. We do not agree.
At the trial to confirm the default judgment, Rodriguez admitted that Prudhomme did not know of the defects and that it was unable to repair the defects. Pursuant to La.Civ.Code art. 2531, Prudhomme is "bound to return the price to the buyer with interest from the time it was paid ... less the credit to which the seller is entitled if the use made of the thing ... were of some value to the buyer."
The trial court found that Rodriguez got the benefit of having a home to live in and used the principal amount she paid monthly as the credit for this value. However, the trial court simply followed the law in reimbursing Rodriguez the interest paid. We find no error in the trial court's assessment of damages.
For the reasons discussed in this opinion, the default judgment against Prudhomme *82 is affirmed. Costs of this appeal are assessed to Prudhomme.
AFFIRMED.