789 So.2d 7 (2000)
Raymond C. DAVIS
v.
COREGIS INSURANCE COMPANY, et al.
No. 00-00475.
Court of Appeal of Louisiana, Third Circuit.
December 27, 2000.
Writ Denied March 30, 2001.
*10 Larry A. Roach, Larry A. Roach, Inc., Lake Charles, LA, Counsel for Plaintiff-Appellant.
Mitchell Evans, II, DeRidder, LA, Counsel for Plaintiff-Appellant.
Allen L. Smith, Jr., Plauche, Smith, & Nieset, Lake Charles, LA, Counsel for Defendants-Appellees.
Court composed of Chief Judge DOUCET, YELVERTON, and SAUNDERS, Judges.
SAUNDERS, Judge.
Mr. Raymond Davis filed suit against his attorney, Mr. H. Gayle Marshall, and Mr. Marshall's insurer, Coregis Insurance Company (Coregis), on March 23, 1999. After both Defendants failed to answer, Mr. Davis entered a preliminary default on April 15, 1999, against them. On April 21, 1999, Mr. Davis confirmed the default, and the trial judge entered a judgment against both Defendants. The Defendants filed a timely motion for a new trial, which the trial court granted. Mr. Davis filed the instant appeal seeking a review of that decision. After reviewing the record, we affirm.

FACTS
Mr. Marshall represented Mr. Davis as his attorney in a number of matters over a period of approximately eight years. Sometime in January or February of 1996, Mr. Davis asked Mr. Marshall to represent him in the purchase of a 679 acre tract located in Calcasieu Parish from the Farm Credit Bank of Texas (Farm Credit). Farm Credit had purchased the property through bankruptcy proceedings from Charles William Heinen and Lenora Jeanne Heinen. As part of that representation, Mr. Davis requested that Mr. Marshall perform a title examination of the tract.
Mr. Davis obtained abstracts from an attorney who had represented the owner of the neighboring property, Mr. Lawerence Heinen, and brought them to Mr. Marshall's office for his examination. Based on the information presented in the abstracts, Mr. Marshall rendered an oral opinion to Mr. Davis that good title appeared to be vested in Farm Credit through its purchase of the acreage during the bankruptcy sale. Mr. Marshall then examined the purchase agreement provisions. In February 1996, Mr. Marshall prepared a draft of an act of sale and sent it to Farm Credit for its examination.
Mr. Marshall testified that sometime later, he received a call from an attorney with Farm Credit. During this conversation, she advised him that Farm Credit wanted to use their own act of sale form which contained specific clauses and provisions. Mr. Marshall testified that the attorney told him there was a competing claim to 85 acres of the tract. The attorney said this competing claim was evidenced by the Calcasieu Parish Assessor's double assessment of the 85 acres. The attorney identified the other party assessed as LaBokay Corporation.
Farm Credit then sent Mr. Marshall a draft of the act of sale it wanted to use. In this act of sale, a portion of the property would be sold with warranty, while the 85 acre tract which had been doubly assessed, *11 would be sold without warranty. Mr. Marshall testified that he told Mr. Davis of that fact and that he showed him a copy of the draft of the Farm Credit act of sale. Mr. Davis testified, however, that he had never seen a copy of the act of sale prior to March 11, 1996.
After learning of the possible double assessment, Mr. Marshall went to the Calcasieu Parish Assessor's Office and confirmed that there was a double assessment in favor of LaBokay Corporation. Mr. Marshall testified that he could see no legal basis for the assessment in the public records, so he assumed it had to be on the basis of adverse possession. Furthermore, Mr. Davis testified that he also went to the assessor's office and confirmed the double assessment before executing the sales contract.
During their conversations prior to the sale, Mr. Marshall testified that he told Mr. Davis that there was an adverse claim to the 85 acres in favor of LaBokay Corporation. Mr. Marshall also testified that he told Mr. Davis that he still believed, based on the public records, that Farm Credit had valid title to the 85 acres. Furthermore, Mr. Davis testified that Mr. Marshall told him of LaBokay's adverse claim prior to his purchase of the tract. Mr. Davis also testified that Mr. Marshall said repeatedly that he would receive clear title to the entire 679 acres.
Thereafter, Mr. Marshall drew up the title insurance policy for the property to be purchased by Mr. Davis. In that title policy, the portion sold under warranty was included within its coverage, while the 85 acres sold without warranty was excluded. Mr. Marshall testified that he had drafted the title insurance policy prior to the date of the closing, March 11, 1996.
The act of sale provides that the property being sold is in two separate parcels described by Exhibits A and B attached to the act of sale. The act of sale recites that Property A, less and except 85 acres in the extreme northwest corner of Section 20, was sold to Raymond and Mary Davis with full warranty of title.
However, as to the 85 acres described as Property B, the act recites:
That Grantor hereby quitclaims, transfers, conveys and delivers to Grantee without any warranty of title whatsoever, even as to Grantor's own acts and even as to the return or reduction of the purchase price of any portion thereof all of Grantor's right, title and interest, if any, and whatsoever, in the following described property (hereinafter referred to as "Property B"), which is more fully described on the attached Exhibit B made a part hereof for all purposes, TO HAVE AND TO HOLD unto Grantee and Grantee's heirs, successors and assigns forever.
. . . .
That Grantor has prior to the execution of this Act of Sale and hereby does again disclose to Grantee that Property B is currently assessed by the assessor for Calcasieu Parish, Louisiana in the name of Charles W. Heinen, et ux, and a third party LaBokay Corporation. That Grantee declares that it fully understands and accepts this disclosure. That Grantee acknowledges that the foregoing disclaimer is of the essence of this sale and the sale would not have been made otherwise.
That Grantee hereby acknowledges and agrees that Grantor warrants only such title for Property A as acquired by the Grantor by virtue of an Act of Sale authorized by an Order of the United States Bankruptcy Court for the Western District of Louisiana, Lafayette Opelousas Division, in and for Case No. 92-50252-07, IN RE: Charles William *12 Heinen, XXX-XX-XXXX, and Lenora Jeanne Heinen, XXX-XX-XXXX ...
Mr. Davis testified that neither he nor his wife read the act of sale or any of the other documents they signed to complete the purchase of the 679 acre tract. Mr. Davis testified that he and his wife signed the act of sale on March 11, 1996, and then filed it with the Clerk of Court's Office in Calcasieu Parish on the same day.
Mr. Davis admitted that he became aware of an "adverse claim" just prior to the closing. On March 11, 1996, Mr. Marshall gave Mr. Davis a letter advising him that there was an adverse claim to approximately 80 acres of the tract to be purchased, and he advised Mr. Davis of specific actions he could take to protect himself against an adverse possession claim. The letter stated:
This letter is issued in conjunction with your purchase from the Farm Credit Bank of Texas of 679.12 acres, more or less, located in Sections 20 and 29 of Township 9 South, Range 12 West, Calcasieu Parish, Louisiana.
As you are aware, there is an adverse claim to approximately 80 acres located in the extreme northwest corner of the Northwest Quarter of Section 20, the adverse claimant being LaBoKay Corporation. The adverse claim stems from a tax assessment by the Tax Assessor of Calcasieu Parish. The acreage in question is doubly assessed, both to the record title owner, Charles W. Heinen, et ux, and to LaBokay Corporation.
You need to take immediate action to prohibit the adverse claimant from claiming 30 years adverse possession. In that regard, I suggest that you take at least the following actions: ...
Mr. Davis testified that Mr. Marshall always told him that he had "good title" to the 679 acre tract and not to worry about the potential adverse claim by LaBokay. In addition, Mr. Davis' wife testified that she questioned Mr. Marshall as to why there were two title descriptions. In response to her question, she testified that Mr. Marshall responded, "Oh, don't worry about that. Everything's fine. You have good title. I'll give you a written opinion later."
In addition to the affirmations made to Mr. Davis and his wife, Mr. Marshall represented Mr. Davis in several matters concerning the property. Mr. Marshall wrote a letter dated April 16, 1996, to Boise Cascade Company, which stated:
Title examination of the subject property does not reveal any title or possessory interest of either Boise or LaBokay, although for the past several years, the property has been doubly assessed by the Tax Collector o[f] Calcasieu Parish.
It has come to the attention of the present owners that Boise Cascade Company and/or LaBokay Corp. are attempting to undertake activities of some kind on the subject property.
Please accept this letter as formal notification that Boise and LaBokay should cease and desist from any further activities on the subject property. No employees or contractors of either Boise or LaBokay should enter the subject property. Any intrusion on the property acquired by the Davis' will be considered by them to be trespass.
Mr. Marshall testified that he also gave a title opinion to Mr. Carl Prejean dated August 8, 1996, which indicated that Mr. Davis had good title to the subject property. Mr. Prejean was considering purchasing timber from Mr. Davis and wanted to insure that he held title to the timber in question.
In addition, Mr. Marshall filed a lawsuit in the 14th Judicial District Court on June 19, 1996, on behalf of Mr. Davis, entitled, *13 Raymond Davis, Mary Elizabeth Davis and Steven Davis v. Bruce Poole, ind. and dba Old Number Seven (7) Hunting Club. Mr. Davis testified Mr. Marshall had filed suit on his behalf against some trespassers on the 679 acres. Mr. Davis also testified that the trespassers, Bruce Poole in particular, were being defended by Boise Southern. In this suit, Mr. Marshall alleged Mr. Davis was the owner of the 679 acres at issue.
Mr. Marshall also defended Mr. Davis in a lawsuit, filed on August 21, 1996, in the 14th Judicial District Court, entitled, Boise Southern Company v. Raymond Davis, Mary Elizabeth Davis and Steven Davis. In that suit, Boise Southern based its claim of ownership on its title, which it alleged was recorded earlier than that of Mr. Davis. In his defense, Mr. Marshall alleged that Mr. Davis was the owner of the entirety of the property at issue.
Mr. Davis testified that he first learned that he did not have good title on September 2, 1998, while he was defending the suit brought by Boise Southern. During trial on the matter, Boise Southern introduced numerous documents into the record to establish its chain of title. Mr. Davis testified that one of the documents was so descriptive and so unambiguous that it made him realize that Mr. Marshall had misled him. After hearing that particular document read, Mr. Davis testified that he turned to Mr. Evans, his attorney, and said, "Well, this is ridiculous. There's no ambiguity about this at all." Mr. Davis then testified that he told Mr. Evans, "For God sake, stop the trial. I don't want to incur any additional expenses or problems by Boise. Let me at least show good faith. And now that this has been read to me in open court, and I understand very clearly that Mr. Marshall was wrong." Shortly thereafter, on March 19, 1999, Mr. Davis acquiesced in a consent judgment against him and in favor of Boise Southern.

PROCEDURAL FACTS
Mr. Davis filed suit against the Defendants, Mr. Marshall and Coregis, on March 11, 1999. Mr. Davis made service on the Secretary of State on behalf of Coregis on March 23, 1999, and it mailed a certified copy of the petition to Coregis at its legal address in Chicago, Illinois on March 24, 1999. The return receipt shows that Coregis received the suit on March 29, 1999. However, Coregis asserts that it did not receive service of the suit until April 7, 1999. Mr. Davis served Mr. Marshall through domiciliary service on March 18, 1999.
Although both Defendants were duly served, the Defendants did not file an answer or appear in court. Mr. Davis entered a preliminary default against the Defendants on April 15, 1999. The matter came up for confirmation of default on April 20, 1999. After Mr. Davis presented evidence and testimony, the trial judge entered a judgment confirming the default on April 21, 1999, for the sum of $1,196,643.62, plus legal interest from the date of judicial demand until paid, against both Defendants. The trial judge also ordered the Defendants to pay all costs of the proceedings.
On April 26, 1999, a timely motion for new trial was filed on behalf of both Defendants. The hearing on the motion for new trial was held on August 19, 1999. On that date, the trial judge rendered, read, and signed a judgment which annulled the April 21, 1999, judgment in favor of Mr. Davis. In her oral reasons for judgment the trial judge stated:
It's my opinion that peremption is a genuine issue even after a default has been confirmed because it extinguishes a *14 right and makes that cause ofexcuse methat judgment null and void.
. . . .
There's no doubt that he was aware of that cloud, and because of that [,] it's my opinion that this lawsuit is perempted and that the judgment is null and void.
From that ruling, Mr. Davis appealed.

LAW AND ANALYSIS

STANDARD OF REVIEW
Two articles govern the circumstances under which a new trial may be granted. First, La.Code Civ.P. art. 1972 provides peremptory grounds for granting a new trial. Under art. 1972,
[a] new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence.
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
(3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.
Second, La.Code Civ.P. art. 1973 gives the trial court discretion to grant a new trial "in any case if there is good ground therefor." Unless an abuse of discretion can be demonstrated, the trial court's action in granting or denying a new trial on discretionary grounds will not be reversed where it is convinced a miscarriage of justice has resulted. Rodriguez v. Prudhomme Mobile Homes, 98-1384 (La.App. 3 Cir. 3/3/99); 737 So.2d 75; Watson v. Nelson, 97-474 (La.App. 3 Cir. 10/29/97), 702 So.2d 1002, writ denied, 97-2958 (La.2/6/98), 709 So.2d 738. The standard of review for the grant or denial of a new trial under art. 1972 and art. 1973 is the same-abuse of discretion. See Zatarain v. WDSU Television, Inc., 95-2600 (La.App. 4 Cir. 4/24/96); 673 So.2d 1181.

ASSIGNMENTS OF ERROR
On appeal, Mr. Davis, the Appellant, asserts the following assignments of error:
1. The trial court erred in allowing Mr. Marshall and Coregis, the Appellees, to raise the issue of peremption after final judgment.
2. The trial court erred in determining that peremption extinguished the right of the Appellant to bring a malpractice action against Appellees, considering the continued representations of Mr. Marshall that Appellant had "good title" and that Appellant should not worry about the matter.
3. The trial court erred in allowing the Appellees to introduce evidence in support of peremption over objection at the hearing of Appellee's motion for new trial when the grounds for peremption were not plead in the motion for new trial and Appellees did not motion to enlarge the pleadings to conform to the evidence.
4. The trial court erred in setting aside the default judgment against the Appellees when the Appellees did not allege and prove that they had good reasons for their failure to appear and timely plead.
5. The trial court erred in annulling its earlier judgment because La.R.S. 9:5605 does not provide for peremption in cases, such as this one, where there is fraud.

FINAL JUDGMENT
In his first assignment of error, the Appellant alleges that the trial court erred in allowing the Appellees to raise the issue of peremption after a default judgment. *15 Appellant argues a default judgment is a final judgment such that it bars the Appellees from raising the issue of peremption. In support of his argument, the Appellant notes, "[p]eremption may be pleaded or it may be supplied by a court on its own motion at any time prior to final judgment." La.Civ.Code art. 3460. A default judgment is a final judgment for the purposes of appeal. La.Code Civ.P. art. 2083. Therefore, the Appellant asserts that since a default judgment is a final judgment, the trial court erroneously considered the peremption of his claim during the hearing on the Appellees' motion for a new trial.
The Appellees argue, however, that a judgment for which a judge may still grant a new trial is not final for the purposes of asserting peremption. In support of their argument, they analogize a final judgment for the purpose of default to a final judgment for the purpose of appeal. Appellees note that a timely motion for new trial suspends the operation of the final judgment being appealed. See La.Code Civ.P. art. 2123(A); Sledge v. Continental Casualty Co., 26-472 (La.App. 2 Cir. 1/25/95); 654 So.2d 358; Petitto v. McMichael, 552 So.2d 790 (La.App. 1 Cir. 1989). Furthermore, they note that where a party files a timely motion for a new trial and that motion has not been acted upon by the trial court, the judgment appealed from is not final. See Halverson v. Eagle Trucking Co., 384 So.2d 999 (La.App. 4 Cir.1980); Billeaud v. Perry, 336 So.2d 539 (La.App. 3 Cir.1976).
Appellees' argument is more persuasive. A final judgment is one which determines the merits in whole or in part. Id. In Bossier's Heirs v. Hollingsworth & Jackson, 41 So. 553, 555, 117 La. 221, 226 (La.1906), the supreme court defined a final judgment as one "which, disposing of all the issues not previously disposed of by interlocutory judgments, is the last judgment in the case." In addition, other case law suggests that a judgment is final when it settles the issues presented in the main controversy to such an extent that it will have the force of res judicata if it is not reversed on appeal. Metairie Bank in Liquidation v. Lecler, 4 So.2d 573 (La.App.Orleans 1941).
In the instant case, the judgment of the trial court was not appealable until the expiration of the new trial delays. Since the trial judge granted a new trial after entry of the default judgment made in favor of the Appellant, the default judgment was not the last judgment made in the case. Instead, the trial court's decision to grant a new trial and annul the earlier default judgment was the last judgment made. Therefore, the default judgment was not a final judgment such that it barred discussion of peremption during the Appellees' hearing on their motion for a new trial. Based on the foregoing discussion, we hold that a party or the court may raise peremption at any time before the expiration of the new trial delays. Accordingly, we find that the trial court did not err in allowing the Appellees to assert a claim of peremption during their hearing on a motion for new trial.

PEREMPTION
In his second assignment of error, the Appellant argues that peremption did not extinguish his right to bring a malpractice claim against the Appellees. The Appellant asserts that Mr. Marshall committed malpractice or fraud through his representations that he had "good title" to the entirety of the 679 acre tract. The Appellant further asserts that Mr. Marshall committed continuing acts of malpractice through numerous separate acts of malpractice or fraud. He alleges that this continuing malpractice took the *16 form of oral assertions, written assertions, and pleaded assertions. The Appellant asserts that Mr. Marshall's acts of malpractice included:
1. writing a letter dated April 16, 1996, to Boise Cascade Company stating that his title examination did not reveal any title or possessory interest in Boise or LaBokay, although the property had been doubly taxed by the Tax Assessor of Calcasieu Parish for several years;
2. giving a title opinion to Carl Prejean dated August 1996, for the 679 acre tract that indicated Appellant had good title to the subject property and which did not indicate that there was any title problem;
3. filing a law suit on June 19, 1996, on behalf of the Appellant, in which he alleged that Appellant was owner of the entire 679 acre tract;
4. defending Appellant in a possessory action filed on August 26, 1996, by Boise Southern.
The Appellant further asserts that these acts of malpractice or fraud continued until at least September 1997, when the Appellee could no longer represent the Appellant due to his arrest and conviction for providing misleading testimony to a grand jury. In addition, the Appellant contends that he did not discover Mr. Marshall's malpractice until September 2, 1998, when he learned during the Boise Southern trial that he did not have good title to the doubly assessed portion of the tract according to the public records. Therefore, the Appellant contends that his filing of the March 11, 1999, malpractice action against the Appellees was timely, as the suit was filed within three years of Mr. Marshall's malpractice and within one year of its discovery as allowed by La.R.S. 9:5605.
In support of his claim that suit was filed timely, Appellant cites Intense Health Care, Inc. v. Gore, 96-863 (La.App. 3 Cir. 2/26/97); 692 So.2d 1, writ denied, 97-0808 (La.5/16/97); 693 So.2d 798. In Intense Health Care, Inc., the court found that a breach of a professional duty which causes the threat of future harm was not sufficient to create a cause of action in legal malpractice because the client had not suffered "appreciable harm". Id. Therefore, the court concluded that the prescriptive period in question commenced within one year from the time that the plaintiff had suffered "appreciable harm" rather than the time when she became aware of the malpractice. Id. Appellant's reliance on Intense Health Care is misplaced, however, as the supreme court's decision in Reeder v. North, 97-0239 (La.10/21/97); 701 So.2d 1291, overrules the "appreciable harm" notion and applies La.R.S. 9:5605 literally.
Under La.R.S. 9:5605(A), a party may not bring any action for damages arising out of an engagement to provide legal services unless he files it in a court of competent jurisdiction and venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date the alleged act, omission, or neglect is discovered or should have been discovered. La.R.S. 9:5605(A) further provides that even as to actions filed within one year from the date of such discovery, all actions must be filed within three years of the alleged act, omission, or neglect.
The three year period set forth in the act is a peremptive period. See Reeder, 97-0239; 701 So.2d 1291.
Peremption differs from prescription in several respects. Although prescription prevents the enforcement of a right by legal action, it does not terminate the natural obligation (La.Civ.Code art. 1762(1)); peremption, however, extinguishes or destroys the right (La.Civ. *17 Code art. 3458). Public policy requires that rights to which peremptive periods attach are to be extinguished after passage of a specified period. Accordingly, nothing may interfere with the running of a peremptive period. It may not be interrupted or suspended; nor is there provision for its renunciation. And exceptions such as contra non valentem are not applicable.
Hebert v. Doctors Mem'l Hosp., 486 So.2d 717, 723 (La.1986); See Reeder, 97-0239; 701 So.2d 1291. In enacting the legal malpractice statute of limitations, the legislature intended the action to be extinguished three years after the act, omission, or neglect giving rise to the action, regardless of when the plaintiff discovered the negligence and regardless of whether a malpractice action was brought within that three-year period. Reeder, 97-0239; 701 So.2d 1291. In addition, the continuous representation rule may not be applied to suspend the statute of limitations period in such an action. Id.
Accordingly, we must address the question of when did Mr. Marshall commit the alleged act or acts of legal malpractice? In her reasons for judgment, the trial judge stated:
At confirmation of default I specifically asked Mr. Roach: "I just want to make sure I understand what you're seeking here. It's your contention that because of an oral representation of clear title that all of these, other than the Norsworthy damages, all of these damages flowed from that misrepresentation of clear title?
"Yes. And, of course, Your Honor, to say that he alsoof course, if there were problems, if the title wasn't clear, Mr. Davis wouldn't have bought the property."
Further review of that entire transcript reveals no other indications of continuing assertion and really no other no other indications that it was anything other than the initial oral assertion of clear title that was complained of.
(Emphasis added.) The trial court is to be afforded great deference in its findings of fact; our review of factual findings made by the trial court is subject to the manifest error/clearly wrong standard. Stobart v. State, Through D.O.T.D., 617 So.2d 880 (La.1993). We agree with the trial judge that the transcript does not show any other acts of malpractice other than Mr. Marshall's initial representation of "good title" after his review of the property's abstract of title. This initial representation took place in February 1996. Therefore, the latest an action could be brought under La.R.S. 9:5605 was in February 1999. The Appellant's action in filing the instant suit on March 11, 1999, was untimely. We find that this claim had prescribed at the time the Appellant brought suit, and furthermore, was perempted by the passage of more than three years since the act occurred. Accordingly, we hold that the trial court did not err in finding that the Appellant's claim against Mr. Marshall for malpractice was perempted.

EVIDENCE
In his third assignment of error, the Appellant asserts that the trial court erred in allowing the Appellees to introduce evidence in support of peremption over his objection at the hearing of the Appellees' motion for new trial. The Appellant argues that the grounds for peremption were not plead in the motion for new trial, and the Appellees did not motion to enlarge the pleadings to conform to the evidence.
The applicable statute, La.Code Civ.P. art. 1154 provides:

*18 When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence.
(Emphasis added.) According to the plain language of this statute, the trial court may allow a party to amend its pleadings and admit evidence over the objections of the opposing party if the evidence will aid in the party's presentation of the merits of the action, and the objecting party fails to show that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. Id.
Despite the clear language of this provision, the Appellant argues that this court should follow the approach taken in Johnson v. Johnson, 614 So.2d 884 (La.App. 3 Cir.1993), writ denied, 617 So.2d 916 (La. 1993). There, the court allowed the plaintiff to introduce evidence, not included within the scope of the pleadings, over objection by the defendant. The plaintiff did not make any motion to expand the pleading to conform with the evidence. Id. This court held that because of defendant's timely objection to claims outside of the plaintiff's pleadings, the admission of evidence regarding those claims was an unwarranted expansion of the pleadings and should not have been considered by the judge in the absence of his granting a motion to amend the petition. Id.
Johnson, however, is distinguishable from the instant case. At issue in Johnson was an allegation by the plaintiff that the defendant owed her reimbursement on IRS withholdings under a marriage contract. Id. The plaintiff's pleadings, however, only referred to items relating to the maintenance of the household, living expenses, life insurance, and the destruction of separate property. Id. The court found that under the marriage contract, there was no mention of the handling of taxes between the parties, nor was there any mention of the handling of taxes in the pleadings. Id. Therefore, the court concluded that the claim fell outside of the perimeter of the contract. Id.
In the instant case, the matter at issue is not the enforcement of a contract, but whether a new trial was properly granted. Unlike her limitations in interpreting the language of a contract, a trial judge has great discretion in determining whether to grant a new trial. See La.Code Civ.P. art. 1973. Accordingly, we will only reverse a trial judge's determination that a new trial should have been granted if we find that the trial judge abused her discretion in granting a new trial. See Zatarain v. WDSU Television, Inc., 95-2600 (La.App. 4 Cir. 4/24/96); 673 So.2d 1181.
Here, the trial court properly allowed the Appellees to admit evidence over the objections of the Appellant. The amendment of the Appellees' pleadings was not necessary as peremption may be supplied *19 by the trial court on its own motion at any time prior to final judgment. In addition, unlike the matter in Johnson, where the matter of taxation was outside of the action on the enforcement of the contract, the possible peremption of the legal malpractice claim against Mr. Marshall went to the merits of the Appellees' motion for new trial. Under art. 1972 and art. 1973, the evidence was properly admitted as being a factor which the court could consider in its discretion in granting a new trial.
Based on the foregoing discussion, we find that the trial court properly admitted evidence dealing with the possible peremption of the legal malpractice claim. Therefore, we find that the trial court did not err in allowing evidence of peremption in over the Appellant's objections.

GOOD REASON
In his fourth assignment of error, the Appellant argues that the trial court should not have set aside the default judgment against the Appellees because the Appellees did not allege and prove that they had good reasons for their nonappearance and for their failure to timely plead. In support of his argument Appellant cites DeFrances v. Gauthier, 55 So.2d 896, 220 La. 145 (1951). Under DeFrances, a party who seeks to have a default judgment rendered against him set aside must allege and prove facts which would excuse his failure to plead any defense that he may have had. Id., See Succession of Rock v. Allstate Life Ins. Co., 340 So.2d 1325 (La.1976); Cavalier v. Nelson, 532 So.2d 899 (La.App. 5 Cir. 1988), writ denied, 536 So.2d 1254 (La. 1989); Kugle v. Hennessy, 480 So.2d 849 (La.App. 2 Cir.1985).
The Appellees did not give any reasons as to why they did not answer the suit in their motion for new trial or in the hearing on their motion for a new trial. In fact, the record is devoid of any explanation as to why the Appellees did not file an answer. In spite of this, the court must consider whether the record supports the trial court's grant of a new trial based on the interest of justice. See Thibodeaux v. Burton, 538 So.2d 1001(La.1989); Ereunao Oil & Gas, Inc. v. Northern, 98-1239 (La. App. 3 Cir. 2/3/99); 736 So.2d 893. A new trial may be granted in the interest of justice where a defective default has been taken. See Ereunao, 98-1239; 736 So.2d 893.
Here, the trial court properly granted a new trial because the Appellant's default was defective. As pointed to by the Appellees in their brief in support of their motion for new trial and on appeal, the Appellant did not provide adequate proof of his damages during the confirmation of default. Therefore, we do not find that the trial court erred in granting the Appellees' motion for new trial. Accordingly, we find the Appellant's fourth assignment of error without merit.

FRAUD
In the Appellant's final assignment of error, he alleges that Mr. Marshall committed fraud such that the peremptive period set forth in La.R.S. 9:5605 does not apply to his cause of action against the Appellees. Fraud is defined by La.Civ. Code art. 1953 as, "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." If such fraud is found in an action for malpractice under La.R.S. 9:5605, then the time for filing an action is not subject to the peremptive period of three years. See La.R.S. 9:5605(E).
This assignment of error is without merit. As discussed in the second assignment of error, the only act of malpractice *20 supported by the evidence in the record was Mr. Marshall's initial assertion of "good title" in February 1996. No evidence suggests that Mr. Marshall attempted to defraud the Appellant. In fact, Mr. Marshall's letter dated March 11, 1996, indicating he had learned of a possible adverse claim to the property, shows that his intention was not to defraud the Appellant. Since the record does not support the Appellant's allegation of fraud, we find that the trial court did not err in applying the three year peremptive period to this case.

DECREE
Based on the foregoing discussion, we find that the trial court did not err in granting the Appellee's motion for new trial. Accordingly, we affirm the decision of the trial court. All costs of appeal are assessed to the Appellant.
AFFIRMED.