STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

07-11

ROBERT LEE LAURENCE, III

VERSUS

SARAH RUTH (SELF) LAURENCE

**********
APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 74,075
HONORABLE VERNON B. CLARK, DISTRICT JUDGE
**********

**GLENN B. GREMILLION
JUDGE**

**********

Court composed of John D. Saunders, Jimmie C. Peters, and Glenn B. Gremillion, Judges.

AFFIRMED.

**Scott Westerchil
101 South First Street
Leesville, LA 71446
(337) 239-9076
Counsel for Plaintiff/Appellee:
     Robert Lee Laurence, III**

**David C. Hesser
2820 Jackson St.
Alexandria, LA 71301
(318) 542-4102
Counsel for Defendant/Appellant:
     Sarah Ruth (Self) Laurence**

GREMILLION, Judge.

The defendant-appellant, Sarah Ruth Laurence, appeals the trial court's judgment modifying domiciliary status and ordering shared custody between her and her ex-husband, the plaintiff-appellee, Robert Lee Laurence. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Robert filed for divorce in March 2005, and a default judgment against Sarah was granted in April 2005, with joint custody of Karlee and Aron Laurence being awarded and both Robert and Sarah being named co-domiciliary parents.[1] In July 2005, Sarah filed a petition for modification of custody requesting that she be named the primary custodial parent. Robert filed an answer and reconventional demand urging that he should be designated the primary custodial parent. The trial court ordered both parties and the children to undergo psychological evaluations. Following a trial in July 2006, the trial court maintained the joint custody award but named Robert as the primary custodial parent. The parties were to share custody on an alternating one week basis. Thereafter, Sarah fired her attorney and hired another who filed a motion for new trial, which was denied as premature, and she filed an alternative motion to reconsider, which was denied on the merits. Sarah now appeals.

## ISSUES

Sarah assigns as error the trial court's:

1. Refusal to grant the motion for new trial when it admitted that it applied the wrong legal standard for custody to a non-parent;

---

[1] Karlee was born September 28, 1997, and Aron was born February 10, 2000. Robert and Sarah were married on December 12, 1997.

1

2. Refusal to grant the motion for new trial for custody of the sibling child;

3. Application of the wrong legal standard at trial for custody to a non-parent;

4. Application of the wrong legal standard at the trial for custody of the sibling; and

5. The grant of domiciliary status to Robert contrary to the weight of evidence and expert opinion.

## LAW AND DISCUSSION

A trial court's determination of child custody is entitled to great weight on appeal and will not be disturbed absent a clear abuse of discretion. *AEB v. JBE*, 99-2668 (La. 11/30/99), 752 So.2d 756. When the trial court has made a considered decree of permanent custody, the petitioning party bears the difficult burden of proving that the continuation of the present custody situation is so deleterious to the child that it justifies a modification of the custody arrangement, or of proving by clear and convincing evidence that any harm likely to be caused by the change of environment is substantially outweighed by the advantages to the child. *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986). A considered decree is one in which evidence as to parental fitness has been received by the trial court. *Oliver v. Oliver*, 95-1026 (La.App. 3 Cir. 3/27/96), 671 So.2d 1081.

When a considered decree has not been rendered, but the parties have stipulated to an agreement without the court considering parental fitness, a lesser burden applies. In order to modify a custody arrangement, the movant must prove that 1) a material change in circumstances has occurred, and 2) that the new custody arrangement would be in the best interest of the child. *Id*.

2

In this case, the original custody arrangement was by default as Sarah did not appear in court, and a subsequent modification was stipulated to by the parties. Thus, the trial court did not hear any evidence as to parental fitness and the custody agreement is, therefore, not a considered decree. Thus, the latter burden of proof applies.

In Sarah's petition for modification of custody and child support she alleged that since the prior judgment the circumstances that had changed to warrant the modification were that: the current visitation schedule was unworkable as it is difficult on the children and is unstable; her work schedule changed and she was only working three nights per week as a nurse assistant; during the marriage she was the primary care taker of the children and only began working nights after the parties separated; Robert inserts the children into the disputes between them; Robert has violated the prior order on at least two occasions by refusing to surrender the children to her for visitation periods; Robert frequently leaves the children with his sister at night while he goes out; Robert threatens her that she will not see the children again; Robert told the children recently that he was going to kill her; and, Robert tried to sideswipe her vehicle with the children inside.

At trial, Sarah testified that she has remarried and that she and her new husband, Roland, purchased a home in Rosepine. She stated that her two children attend school in Hornbeck, which is now a forty-five minute drive from her home. Sarah stated that she would place the children in school in Rosepine. She also said that she did not have any problem with the children having frequent visitation with Robert.

Sarah testified that Robert refers to her as a "slut", "whore", and a "bitch" in front of the children and that he has anger management problems. She stated that he has tried to run her off the road on more than one occasion. She testified that Robert has told the children that he was going to kill her. She further testified that she has been the children's primary care giver throughout their lives.

Sarah further testified that since she and Robert separated she has had five jobs, two of which she was fired from. She stated that she missed days from work because she was arrested for writing hot checks. Additionally, she testified that since the separation she has lived in three different locations and lied to Robert as to the address of one of her residences. She further testified that at one point, she did have a married roommate and her fourteen year old sister whose boyfriend would sleep over, but not on the nights when she had her children.

Sarah further testified that she did not tell her children that she had remarried until three weeks after the ceremony. She stated that her new husband owns three homes in Hayes, which is ninety miles from Leesville, where the children currently attend school. She stated that her husband rents out two of the homes. She said that they purchased a $1500 mobile home closer to Leesville so that she could reside closer to her family. However, Sarah denied that if she were to obtain primary custody of the children she would move back to Hayes with her husband. Sarah then described the multiple residences she has had since the divorce and the various people she has lived with in those residences. Sarah also admitted that two months prior to the trial she had been in jail for failing to pay a fine associated with a DWI she received in 2004. She admitted that Robert's home life has been much more stable

4

than her own given that he resides in the home the children were raised in, has had the same job for multiple years, and the children can attend the same school. She admitted that they have both grown up in Hornbeck, but stated that she would like to move them to Rosepine. She also testified that she has no land line, but does have a cell phone.

Richard Self, Sarah's brother, testified that he accompanied his sister to six or seven of the custody exchanges. He testified that one time Sarah was having problems with her car and asked him to pick up her kids. He testified that Robert would not allow him to pick up the kids. He stated that Robert is rude to Sarah and calls her names such as "bitch" and "slut" in front of the children. He testified that he works away from home for a month at a time, and he stays at Sarah's house when he comes home for two or three days. He stated that he stays at Sarah's house when he comes in from work. On cross-examination, Self testified that Roland and Sarah do not live together, but then explained that he was not home often enough to justify that fact.

Rebecca Martin, Sarah's sister, testified that she is the primary babysitter of Karlee and Aron. She testified that the children are well behaved and get along with their mother. She said that the children have stated that Robert's home is not the cleanest and that their clothes are not always clean. She further testified that she did not feel that the 50/50 custody arrangement was working very well because Sarah has a difficult time getting the children back and forth to school because of the considerable distance from her home to their school in Hornbeck. She believed it would be best for the children if they resided with their mother during the week.

5

Jamie Aden, Sarah's best friend of twelve years, testified that Roland is very good with the children and has taken them for family outings to the zoo, fishing, and to the lake. She testified that she has accompanied Sarah to the custody exchanges. She described Robert as having a "little attitude." She stated that Robert has called Sarah a "slut" and a "bitch." She further testified that she heard Robert threaten to kill Sarah over the speakerphone. Aden further testified that, although Sarah and Roland have been married for two months, they have never lived together. She stated that Roland lives in Hayes and "has a job up there and [Sarah] lives here with her kids." She further testified that Sarah had planned to move to Hayes, but changed her mind after the psychiatrist said she would lose her kids.

Robert testified that he has lived at his current address for eight years and has worked at his present job for three-and-a-half years as a mechanic. He stated that he works from 8:00 a.m. to 5:30 p.m. daily and is off on the weekends. He stated that he does not work any overtime. He testified that the custody arrangement was working well until Sarah moved because she had to drive so far to get the children to school. He stated that Sarah requested that she move the children to a different school in the middle of the year so that they would be closer to her new residence, but that he refused.

Robert testified that since the divorce, Sarah has been leading a "happy-go-lucky" lifestyle involving going out and having fun and many boyfriends. He stated that Sarah admitted to having multiple boyfriends and said that he has seen her with them. He testified that he does not have a girlfriend nor has he had any women sleep at his house.

6

Robert then testified regarding several incidents. He stated that he has never told the children that he was going to kill Sarah. He further testified regarding the incident in front of Radio Shack where Sarah's brother came to pick up the children. He stated that he refused to allow them to go with him because he had been drinking and because Sarah had told him during the marriage that her brother had molested her when they were children. He stated that he did have a gun in his truck and that once the police came they told everyone to go home.

Finally, Robert testified that he was happy with the 50/50 arrangement because the kids want to be with both parents, but that he would rather primary custody be placed in him if the court had to choose because he feared that Sarah will leave the parish. He testified that Sarah told him in a text message that she was moving to Hayes. Robert did admit to calling Sarah a "bitch" and a "slut" in front of the children. He further admitted to letting his anger get the best of him. He also realized that he sometimes put the children in the middle of the situation when he questioned them about whether their mother had been drinking or having men sleep over.

Additionally, the reports of psychologist Dr. John C. Simoneaux were admitted into evidence.

At the conclusion of the trial, the trial court gave oral reasons for its custody award amounting to fifteen typed legal pages. Clearly, the trial court elaborated as to its reasons in awarding custody, part of which is reprinted here:

> Now, Dr. Simoneaux basically said a "50/50" split is appropriate and I'm inclined to agree. . . . So, I'm going to maintain shared custody on the following arrangement. One week and one week, the exchange of the children will occur on Sunday evening at 5:00 p.m. . . . That gives

7

the children the stability of being in one household for the entire school week instead of the middle of the week exchange[.] . . . . I believe that co-domiciliary parents - parenting at this point is unworkable. [I]f one parent is designated as a primary domiciliary parent, then the school should be most convenient to that parent. Now [Dr. Simoneaux] says in one breath, if one parent is designated as the primary custodial parent, then that school most convenient should be the one that the children go to. Then, he says, but, you know, strong consideration should be given to Sarah. The children have lived in Hornbeck. The children have gone to school in Hornbeck. I see no evidence that tells me that it would be either beneficial or necessary for the children to change schools simply for the sake of the convenience of the mother. . . . I don't want the children to have to be shifted around and change schools simply because mom's a little put out of - as far as inconvenience is concerned, so, bottom line is, dad is being named as the domiciliary parent, and the children, therefore, will go to Hornbeck school this year.

Having reviewed the evidence and testimony, we cannot say that the trial court abused its discretion in naming Robert as the domiciliary parent. It was clear that both parents had room for improvement in their communication and parenting skills. However, the trial court was of the opinion that the best interests of the children were served by maintaining their home base and school and by ensuring continuity in the Hornbeck school system. Moreover, the week-to-week arrangement allows for a more orderly school week in which each parent can be assured that he/she is receiving the necessary school papers for the week. Although Dr. Simoneaux's report indicated a preference for Sarah, the trial court found the report contradictory in some respects and was free to arrive at its own conclusions based on the testimony and evidence before it. We find no abuse of discretion in the trial court's findings. Accordingly, this assignment of error is without merit.

**Motion for New Trial**

The Louisiana Code of Civil Procedure provides three instances under which a motion for new trial will be granted in Article 1972:

8

1. When the verdict or judgment appears clearly contrary to the law and the evidence.

2. When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.

3. When the jury was bribed or has behaved improperly so that impartial justice has not been done.

Louisiana Code of Civil Procedure Article 1973 further provides that a motion for new trial may also be granted "if there is good ground therefore, except as otherwise provided by law." In both instances, the trial court is accorded vast discretion in deciding whether to grant the motion; its decision whether to do so is reviewed pursuant to the abuse of discretion standard of review. *Davis v. Coregis Ins. Co.*, 00-475 (La.App. 3 Cir. 12/27/00), 789 So.2d 7, *writ denied,* 01-0292 (La. 3/30/01), 788 So.2d 1192.

The trial court issued a written ruling denying Sarah's motion for a new trial:

[Sarah] has raised, for the first time, the undisputed fact that [Robert] is not the biological or legal father of one of the children, Karlee. That is not disputed by [Robert], except that in a post-hearing memorandum, [Robert's] counsel attached a copy of an unsigned birth certificate naming him as the father. That document is not in evidence and has not been considered by the Court.

In this motion for a new trial, the Court is required to consider whether the change in the status of the child as it relates to [Robert] resulted in a miscarriage of justice. In making such an analysis the Court may consider all of the evidence it heard at trial. Of course, the burden of the non-parent is to prove that a risk of substantial harm would come to the child if placed with the parent.

The Court has considered the evidence and finds that it would create a risk of substantial harm to place the child with the mother, since to do so would result in the separation of these two half-siblings from each other.

9

The evidence clearly established that practically since the day of birth [Robert] has been the child's father in all ways except biologically. Both children were reared equally as children of these two parties. To separate the two would cause severe harm to one, if not both of them.

Having already awarded domiciliary custody of Aron to [Robert], the Court finds that the best interests of Karlee would be served, for the reasons already stated, by keeping that child with her sibling.

At the hearing on the motion for new trial, the trial court acknowledged that, had it known that one of the children was not the biological child of Robert, a different standard–the substantial harm standard found in La.Civ.Code art. 133–would have applied to change domiciliary status from the biological mother to a non-parent. However, the trial court noted, and we agree, that the mother's urging Robert's non-biological status at such a late stage of the proceedings was merely because she did not like the result of the trial. Sarah had every opportunity to raise the issue of Robert's non-biological status as to Karlee. These proceedings have been ongoing for several years and the issue has never been raised.

Having reviewed the trial court's reasoning subsequent to the motion for new trial, we find no abuse of discretion. The motion for new trial was properly denied on the basis that none of the Article 1972 requirements were met. The fact of Robert's non-biological status was certainly not newly discovered evidence. Accordingly, this assignment of error is without merit.

## CONCLUSION

The judgment of the trial court naming the plaintiff-appellee, Robert Lee Laurence, the primary custodial parent of Karlee and Aron Laurence is affirmed. All costs of this appeal are assessed against the defendant-appellant, Sarah Ruth Laurence.

**AFFIRMED.**

10